**ELONEX I.P. HOLDINGS, LTD., and EIP Licensing B.V., Plaintiffs,**

**v.**

**APPLE COMPUTER, INC., Defendant.**

**No. 01–100–GMS.**

United States District Court, D. Delaware.

May 15, 2001.

Donald F. Parsons, Jr., Morris, Nichols Arsht & Tunnell, Wilmington, DE, Martin J. Black Dechert, Price & Rhodes, Philadelphia, PA, for Plaintiff.

Frederick L. Cottrell, III, Richards, Layton & Finger, Wilmington, DE, Wayne M. Harding Brobeck Phleger & Harrison, Austin, TX, for Defendant.

## MEMORANDUM AND ORDER

SLEET, District Judge.

Presently before the court is Elonex's motion for admission *pro hac vice* of Arthur Newbold and Martin J. Black of the firm, Dechert, Price & Rhoads. The defendant, Apple Computer, Inc. opposes Dechert's motion and has filed a motion to disqualify the Dechert firm.

Upon consideration of the written submissions of the parties and the applicable principles of law, the court concludes that disqualification is not warranted in this case. Therefore, the court will grant Dechert's motion for admission *pro hac vice* and will deny Apple's motion for disqualification.

## I. DISCUSSION

### A. Disqualification

The court has inherent power to supervise the professional conduct of attorneys appearing before it. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980). This power includes the authority to disqualify an attorney. *Id.* At the outset, however, the court wants to emphasize that motions to disqualify are generally disfavored. *See Cohen v. Oasin*, 844 F.Supp. 1065, 1067 (E.D.Pa.1994). The party seeking disqualification must "clearly show[ ] that continued representation would be impermissible." *Id.* As such, "[v]ague and unsupported allegations are not sufficient to meet this standard." *Id.*

The court must first determine if Dechert has violated Rule 1.7(a) of the Model Rules of Professional Conduct, and if so, the court will then determine whether disqualification is an appropriate sanction for such a violation. Given the facts in this matter, the courts finds little that would justify application of a *per se* rule of disqualification in light of relevant precedent in this circuit. In particular, the court takes guidance from *Pennwalt Corporation v. Plough, Inc.*, a 1980 District of Delaware case. *85 F.R.D. 264, 269 (D.Del. 1980)* Although the court in *Pennwalt* was applying the Code of Professional Responsibility, the basic inquiry still remains the same: the court must determine if Dechert's representation of Apple as local counsel in an unrelated patent infringement action filed in Massachusetts conflicts with its representation of Elonex in the action before this court in which Apple is one of the named defendants, such that these simultaneous representations violate the ultimate purpose and objective of ABA Model Rule 1.7(a). *Id.*

The court does not believe the representation in this matter violates the rule and

will not apply a *per se* rule of disqualification in this instance.

## B. Application of Rule 1.7

Pursuant to Local Rule 83.6(d)(2), the District of Delaware has adopted the Model Rules of Professional Conduct. Rule 1.7 of the Model Rules provides that an attorney may not represent two clients when representation of one would be "directly adverse" to or would "materially limit" representation of the other, unless the attorney "reasonably believes" that the representation of the other would not be "adversely affected" and both clients consent to the representation. *See Lease v. Rubacky,* 987 F.Supp. 406, 407 (E.D.Pa.1997).

### 1. The Record Supports Dechert's Contention that it Reasonably Believes it Can Fully Serve both Apple and Elonex.

 First, the court agrees with Elonex and finds that the matters in which Dechert represents Elonex and Apple are not related and there is no evidence that confidential information has passed, or is likely to pass, from Apple to Elonex. In fact, the court notes that an impermissible conflict is not always created when a simultaneous representation concerns an unrelated matter and involves clients whose interests are only generally adverse. *See Annotated Model Rules of Professional Conduct,* at 98. Although Apple vigorously argues that Dechert's representation of Elonex is directly related and adverse to its representation of Apple in the *Articulate* matter, the court is not persuaded by this argument. Given that the *Articulate* matter involves a different type of patent dispute, that is, a different type of technology, and that Elonex is merely serving as local counsel in that matter, Dechert could reasonably serve both client's interests. However, even assuming there is an im-

permissible conflict of interest here, the court concludes that Apple has waived the conflict.

### 2. The Record Demonstrates that Apple granted a full waiver, and not, merely a Transactional waiver.

 Although Apple urges the court to find that it only granted a limited waiver, described in the submissions as a transactional waiver, for the purpose of negotiating a possible license, the record before the court does not support this contention. As a general matter, a client may expressly or impliedly waive his objection and consent to an adverse representation. Given the facts in the record, Apple cannot reasonably or credibly maintain that Albert P. Cefalo, in-house counsel for Apple, believed that he was merely granting a transactional waiver.

██ First, the court finds Apple's assertion that Dechert did not fully inform Apple about the conflict to be without merit. Under the Model Rules of Professional Conduct, a consultation is defined as a "communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question." *See Annotated Model Rules of Professional Conduct,* at xviii. Given that Cefalo, who was the Director of Intellectual Property at Apple, knew about the possibility of suit from Elonex, his discussion with Tim Blank of Dechert in Boston was reasonably sufficient, or should have been reasonably sufficient, to cause Apple to appreciate the significance of any potential conflicts. Therefore, considering that Elonex had not yet filed a suit, the court concludes that Dechert had provided Apple with sufficient information about the possible conflict. The facts in the record suggest that Dechert obtained a prospective waiver from Apple. The ABA has affirmed the validity of prospective waiv-

ers. *See ABA Comm. on Ethics and Prof'l Responsibility, Formal Op.* 372 (1993). A prospective waiver should identify the potential opposing party, the nature of the likely subject matter in dispute, and permit the client to appreciate the potential effect of the waiver. *See City of Kalamazoo v. Michigan Disposal Serv. Corp.*, 125 F.Supp.2d 219, 243 (W.D.Mich. 2000). Therefore, considering that Blank identified the possibility of this patent infringement suit, Cefalo was already aware of the possibility of suit, and the two discussed methods of dealing with the conflict, the court finds that Blank sufficiently explained the conflict in order to obtain a prospective waiver from Apple.

Moreover, the undisputed facts in the record show that: Cefalo had reviewed both Elonex letters. In particular, the letter sent on April 27, 1999, stated that

US infringement proceedings are currently ongoing against [others]. You must not doubt—from our not yet having brought similar proceedings against you, from our continuing not to do so until such time as we consider convenient (upon if not before the completion of these proceedings), or otherwise— that we continue to intend fully to assert all of our rights against you.

Thus, it was clear at the time Apple sought to retain Dechert in the *Articulate* matter, that Apple's interests were adverse to Elonex's. It is also not disputed that:

● Cefalo discussed the waiver with Tim Blank of Dechert's Boston office in 1999;

● Apple concedes that Cefalo agreed to grant a waiver, and there is no evidence that he expressly limited the scope of the waiver during this discussion; and,

● In February of 2000, when Blank again spoke with Cefalo on the waiver issue, Cefalo again did not limit the scope of the waiver.

Finally, there is also substantial evidence in the record demonstrating that in agreeing to a waiver, Cefalo probably agreed not to file a motion to disqualify Dechert in any future litigation. This fact raises a strong inference that the waiver was granted for more than transactional purposes.

In light of the evidence before it, the court finds that Apple was informed about the conflict and granted a waiver. Thus, the court must conclude that Dechert has not violated Rule 1.7.

## C. Disqualification is Not Warranted in This Case.

■ Even if the court were to find that there was no waiver and that Dechert has violated Rule 1.7(a), disqualification is not warranted in this case. As the court has already stated, disqualification is a severe sanction. Although disqualification is ordinarily the result of a finding that an ethical rule has been violated, disqualification is never automatic. *United States v. Miller*, 624 F.2d at 1201. Moreover, the Third Circuit has noted that a district court has "wide discretion in framing its sanctions to be just and fair to all parties involved." *Id.*

Within the context of this case, the balance of factors articulated in the Third Circuit's decision in *In re Corn Derivatives Antitrust Litigation*, weigh heavily in favor of denying Apple's motion to disqualify. *See id.* at 748 F.2d 157, 162 (3d Cir. 1984).

■ First, to address Apple's interest in attorney loyalty, the court notes that the risks present in most concurrent representation—that is, a risk of divided loyalty to each client or an imposition on the independent judgment on Dechert's part, are not great in this case. *See Annotated Model Rules of Professional Conduct*, at 95. In other words, the critical question is

whether Dechert's alleged concurrent representation of Elonex in this litigation and Apple in the unrelated Massachusetts suit will materially interfere with its independent professional judgment? *See Kaiser v. Stewart,* NO. 96-6643, 1997 WL 186329, at *2 (E.D.Pa. Apr.10, 1997). The facts of this case, do not demonstrate that Dechert's loyalty to Apple will be compromised. Again, despite Apple's charge that "the overlap between the two suits is too great," Dechert's work as local counsel in the *Articulate* matter has been limited; the matters, although both patent infringement matters, are not directly related; the work is being done out of different offices in different cities; and Dechert has maintained an ethical wall since it began representing Apple in the *Articulate* matter.

Moreover, without in the slightest degree discounting Apple's interest in attorney loyalty, the court finds Elonex's interest in retaining its counsel in this case to be compelling. Apple's assertion that "any inconvenience to Elonex is just that and no more" is unpersuasive in light of the facts in the record. Dechert has represented Elonex in connection with its interests in the technology at issue in this matter since 1995, and has prosecuted lawsuits in this court since 1998 to protect those interests. Dechert's extensive familiarity with the factual and legal issues in this complex patent case cannot be overstated. Thus, the court finds Apple's characterization of Elonex's interest in the counsel of its choice to be, at best, somewhat disingenuous. As Dechert points out, Mr. Blank has logged at a maximum less than 15 hours in the *Articulate* matter, while Elonex has billed over 9,000 hours on this matter thus far. Thus, Elonex would certainly be more than merely inconvenienced if the court were to accede to Apple's request and disqualify Dechert.

Also, in light of Dechert's knowledge of the case, it is certain that Elonex will be prejudiced if it has to retain new counsel. There is no doubt that it will be both inefficient and costly for Elonex to get new counsel up to speed in this matter. This is especially true in light of Dechert's representation of Elonex on the 21 other cases Elonex has filed on the same legal issues.

 Furthermore, the court finds that its interest in protecting the integrity of the proceedings before it and maintaining public confidence in the judicial system does not weigh in favor of disqualification. First, as previously stated, motions to disqualify are viewed with caution because of the potential for their misuse. *See Annotated Model Rules of Professional Conduct.* It is well known to this court, and many others, that motions for disqualification are frequently filed as "dilatory tactics intended to divert the litigation from attention to the merits." *SWS Financial Fund A v. Salomon Bros., Inc.,* 790 F.Supp. 1392, 1401 (N.D.Ill.1992). Quite frankly, while the court is somewhat perplexed by Dechert's failure in Boston to detect at least the potential for a conflict when it ran its check, it believes it has before it a not-too-well disguised and rather sanctimonious effort to divert this court's attention. The court will not countenance such tactics now or at any future stage of this litigation. Furthermore, the court finds that depriving Elonex of its longstanding counsel is more likely to *decrease* the integrity of and public confidence in these proceedings.

Second, the record in this case does not describe the simple situation in which a trusting client has been betrayed by its attorney who unexpectedly filed suit against it on behalf of another. Rather, the undisputed facts in the record show that Apple, a sophisticated multi-national corporation, was aware of the very real possi-

bility of litigation with Elonex. Apple cannot credibly claim that it was unaware that its interests were adverse to Elonex's when it retained Tim Blank as local counsel in the *Articulate* matter. Given the context of this case, it seems highly unlikely that Apple's motion is primarily motivated by a sense of betrayal or a concern for the vindication of the integrity of the bar. *See Gross v. Gross,* 1997 WL 653909 (E.D.Pa.1997). Having considered the facts of this case, the court is unable to see how the court-ordered severance of Elonex's long-standing relationship with Dechert in this matter will serve the interests of justice and fairness, or how it will serve to maintain the integrity of the legal profession in the eyes of the public. *See id.*

Therefore, the court concludes that in this case, disqualification is not an appropriate means of enforcing Rule 1.7(a) of the Model Rules of Professional Conduct, and thus, it will exercise its discretion and deny Apple's motion to disqualify the Dechert firm from representing Elonex in this matter.