[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16216
_____

D. C. Docket No. 4:11-mc-00073-RH-CAS

REPUBLIC OF ECUADOR,
DR. DIEGO GARCIA CARRION,

Petitioners-Appellees,

versus

DR. ROBERT E. HINCHEE,

Respondent-Appellant,

CHEVRON CORPORATION,

Intervenor-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(December 18, 2013)

Before HULL and HILL, Circuit Judges, and PANNELL,[*] District Judge.

_____

[*]Honorable Charles A. Pannell, Jr., United States District Judge for the Northern District
of Georgia, sitting by designation.

HULL, Circuit Judge:

Respondent-Appellant Dr. Robert Hinchee ("Dr. Hinchee"), who resides in Florida, and Intervenor-Appellant Chevron Corporation ("Chevron") appeal the district court's discovery order compelling production of Dr. Hinchee's documents to Petitioner-Appellee, the Republic of Ecuador ("the Republic"). Dr. Hinchee served as a testifying expert for Chevron in a related proceeding. Dr. Hinchee's documents at issue are (1) Dr. Hinchee's personal notes for his own use and (2) email communications between Dr. Hinchee and a group of non-attorneys consisting primarily of other Chevron experts. Dr. Hinchee and Chevron contend that these documents are shielded from discovery by the work-product doctrine, relying primarily on Rule 26(b)(3) and the 2010 Amendments to Rule 26(a)(2) of the Federal Rules of Civil Procedure.

This case requires the Court to determine (1) the scope of discovery that can be obtained from testifying experts under Rule 26 and (2) the impact of the 2010 Amendments to Rule 26 on that discovery. After careful review of the briefs and with the benefit of oral argument, we affirm the district court's order compelling the production of the documents in this case.

## I. BACKGROUND

### A.    The Underlying Litigation in Ecuador

The discovery dispute before this Court is only a minor part of a large

2

international controversy.  It began in 1993 when a group of Ecuadorian plaintiffs filed a class action complaint against a subsidiary of Texaco, Inc. in the Southern District of New York.  The Ecuadorian plaintiffs alleged that Texaco's oil exploration in the Amazonian rain forest polluted private and public lands in Ecuador and that Texaco was responsible for the plaintiffs' oil-related health problems and the environmental contamination of the plaintiffs' property.  See Jota v. Texaco, Inc., 157 F.3d 153, 155-56 (2d Cir. 1998).  The Southern District of New York dismissed the case on the basis of forum non conveniens, Aguinda v. Texaco, Inc., 142 F. Supp. 2d 534, 554 (S.D.N.Y. 2001), and the Second Circuit affirmed, 303 F.3d 470, 480 (2d Cir. 2002).

After this ruling, some of the plaintiffs filed similar claims in Lago Agrio, Ecuador in 2003.  By then, Chevron had merged with Texaco, thereby assuming liability for Texaco's operations.  See Republic of Ecuador v. Chevron, 638 F.3d 384, 388 n.1, 389 n.3 (2d Cir. 2011).  The Lago Agrio court in Ecuador issued its judgment in 2011, awarding the Ecuadorian plaintiffs approximately $18.2 billion in damages against Chevron.  The first-level appellate court affirmed this judgment in full, but Ecuador's highest court recently reduced the judgment to $9.1 billion.

## B.     Treaty Arbitration in The Hague

While the Lago Agrio litigation was pending in Ecuador, Chevron sought arbitration against the Republic of Ecuador ("the Republic") in front of the

Permanent Court of Arbitration in The Hague, Netherlands. Chevron claimed that the Republic had violated its obligations under the Ecuador-United States Bilateral Investment Treaty ("Treaty"). Specifically, Chevron contended that the Republic breached the Treaty by: (1) failing to notify the Lago Agrio court that Chevron was fully released from any liability relating to the environmental pollution through a settlement agreement between Chevron and the Republic; (2) refusing to "indemnify, protect and defend" the rights of Chevron in connection with the Lago Agrio litigation; (3) "openly campaigning for a decision against Chevron"; and (4) engaging "in a pattern of improper and fundamentally unfair conduct."

This Treaty arbitration remains ongoing. Chevron seeks, inter alia, indemnification or damages from the Republic to cover the cost of the monetary award entered against Chevron in the Lago Agrio litigation. To support its position in the Treaty arbitration, Chevron has sought materials and documents in the possession of experts who testified for the plaintiffs in the Lago Agrio litigation, including experts residing in the United States. In turn, the Republic has requested discovery from Chevron's expert witnesses in the Lago Agrio litigation, including Dr. Hinchee in Florida.

## C.    Subpoena on Dr. Hinchee

The Republic sought discovery from Dr. Hinchee in the District Court for the Northern District of Florida where Dr. Hinchee resides. The Republic

4

requested this discovery to aid "in defending the validity of the Lago Agrio judgment" in the Treaty arbitration. The Republic explained that "Dr. Hinchee is an environmental engineer and an expert in the assessment and remediation of petroleum contaminated sites." Because Chevron relied on Dr. Hinchee's expert reports in both the Lago Agrio litigation and in the Treaty arbitration, the Republic contended that Dr. Hinchee and his documents were relevant to the Treaty arbitration. The Republic requested that the district court issue a subpoena to Dr. Hinchee for a deposition and production of documents pursuant to 28 U.S.C. § 1782, which allows the district court to issue orders to give "[a]ssistance to foreign and international tribunals and to litigants before such tribunals."

Chevron intervened in the district court action and opposed the subpoena. The district court granted the Republic's request for a subpoena, and Dr. Hinchee and Chevron produced approximately 94,000 pages of documents. However, Dr. Hinchee and Chevron asserted work-product protection over 1,200 documents.

**D.    The Republic's Motion to Compel**

The Republic moved to compel production of the remaining 1,200 documents, challenging Chevron's and Dr. Hinchee's assertions of work-product protection and requesting that the district court perform an in camera review. Chevron and Dr. Hinchee opposed the motion.

The district court initially granted the Republic's motion in part, ordering

5

Chevron to submit 40 of the withheld documents for <u>in camera</u> review.

**E.    District Court's Order After <u>In Camera</u> review**

After concluding its <u>in camera</u> review, the district court ruled that 39 of the 40 documents were not privileged. The one document that the district court found protected by the work-product doctrine was a draft of an expert report.  The remaining 39 documents consisted of (1) Dr. Hinchee's notes and (2) communications between Dr. Hinchee and "one or more individuals who were neither attorneys nor members of an attorney's staff."  Some of the communications in this second group were between Dr. Hinchee and other expert witnesses testifying for Chevron.   Other communications were between Dr. Hinchee and "Chevron nonattorney employees, including Sara McMillan [sic]."[1]

The district court ordered Chevron and Dr. Hinchee to produce the 39 non-privileged documents, explaining that the "work-product doctrine [does] not protect a testifying expert's own notes or communications with another testifying expert."

The district court also ordered Chevron and Dr. Hinchee to "produce to the Republic all other documents [listed on the privilege log] . . . that were not draft reports or communications between Chevron's attorneys or their staff members

---

[1]Although not apparent from the district court's order, the record indicates that Ms. McMillen is a scientist at Chevron and serves, <u>inter alia</u>, as the "Lago Agrio litigation Technical Team Project Manager."

6

and Dr. Hinchee or his staff members." And to the extent Chevron and Dr. Hinchee still maintained any claim of attorney-client privilege or work-product protection over any document, the district court ordered Chevron and Dr. Hinchee to submit the document to the court for in camera review.

Chevron and Dr. Hinchee timely appealed the district court's order.

## II. STANDARD OF REVIEW

"[D]istrict courts are entitled to broad discretion in managing pretrial discovery matters," Perez v. Miami-Dade Cnty., 297 F.3d 1255, 1263 (11th Cir. 2002); see also Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1306 (11th Cir. 2011), including when ruling on the applicability of the work-product doctrine, see, e.g., United Kingdom v. United States, 238 F.3d 1312, 1321 (11th Cir. 2001) (holding that "the district court did not abuse its discretion by declining to order the production of the Government's confidential work product"); see also Bradley v. King, 556 F.3d 1225, 1229 (11th Cir. 2009) ("A district court has wide discretion in discovery matters and our review is accordingly deferential." (internal quotation marks omitted)). However, the "[i]nterpretation of the Federal Rules of Civil Procedure presents a question of law subject to de novo review." Mega Life & Health Ins. Co. v. Pieniozek, 585 F.3d 1399, 1403 (11th Cir. 2009).

The issue in this appeal is whether the district court erred in its interpretation

of Rule 26, including the 2010 Amendments to Rule 26. This presents a question of law subject to this Court's de novo review. See Klay v. All Defendants, 425 F.3d 977, 982 (11th Cir. 2005) (noting that a district court is entitled to broad discretion in pretrial discovery matters, but holding that interpretations of a term in Rule 45 is a legal question subject to de novo review); Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1279 (11th Cir. 2000) ("[T]o the extent that the issue involves the interpretation of the Federal Rules of Civil Procedure, we review de novo.").

### III. DISCUSSION

At issue in this appeal are (1) Dr. Hinchee's personal notes prepared for his own use and (2) email communications between Dr. Hinchee and a group of non-attorneys consisting primarily of other Chevron experts. The question is whether the Republic may discover these documents.

### A.    Rule 26(b)(1) Entitles the Republic to All Relevant, Non-Privileged Information

We begin our analysis with Rule 26(b)(1), which sets forth the general scope of discovery. It instructs that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) indicates that "[t]he

8

Federal Rules of Civil Procedure strongly favor full discovery whenever possible," Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985), as this rule generally entitles a civil litigant "to discovery of any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence," Degen v. United States, 517 U.S. 820, 825-26, 116 S. Ct. 1777, 1782 (1996) (internal quotation marks omitted).

There is no dispute here that Dr. Hinchee's notes and email communications with non-attorneys, including other experts, are relevant within the meaning of Rule 26(b)(1). The Republic is thus entitled to discover these materials—unless Chevron and Dr. Hinchee can meet their burden of establishing that a privilege or the work-product doctrine exempts these documents from discovery. See United States v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991) (holding that the party invoking the attorney-client privilege bears the burden of establishing that the privilege applies); see also Barclaysamerican Corp. v. Kane, 746 F.2d 653, 656 (10th Cir. 1984) (holding that "[t]he party seeking to assert the attorney-client privilege or the work-product doctrine as a bar to discovery has the burden of establishing that either or both is applicable").

The documents here do not involve communications between (1) Chevron's attorneys (in-house or outside counsel) or their staff members and (2) Dr. Hinchee or his staff members. Rather, Chevron and Dr. Hinchee claim that Dr. Hinchee's

9

personal notes and email communications with non-attorneys, such as other experts, enjoy work-product protection under Rule 26(b)(3)(A). We examine this rule next.

## B.    Rules 26(b)(3)(A) and (b)(4)

First enacted in 1970, Rule 26(b)(3)(A) incorporates the attorney work-product doctrine discussed in the Supreme Court's seminal decision in Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385 (1947). Rule 26(b)(3)(A) provides in relevant part: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). It is undisputed that the documents at issue were prepared "in anticipation of litigation or for trial" and that Dr. Hinchee and his colleagues prepared these documents as part of their work for Chevron. It is also undisputed that Dr. Hinchee is a testifying expert for Chevron.

Chevron and Dr. Hinchee contend that Rule 26(b)(3)(A) protects the materials at issue here because Dr. Hinchee is Chevron's "representative" and, therefore, these materials were "prepared by or for a representative." Alternatively, Chevron and Dr. Hinchee argue that these materials are covered by Rule 26(b)(3)(A) because they were "prepared for a party." The threshold question is, however, whether Rule 26(b)(3)(A) even applies to a testifying expert.

10

The text, structure, and background of Rule 26 suggest otherwise.  While Rule 26(b)(3)(A) mentions a "party or its representative," including an "attorney, consultant, surety, indemnitor, insurer, or agent," the word "expert" is noticeably absent.  This silence speaks volumes, in light of the fact that right after subsection (b)(3), Rule 26 contains another provision expressly dealing with experts.  Concurrent with the enactment of Rule 26(b)(3)(A) in 1970, the drafters also implemented an entirely new provision in Rule 26(b)(4)(A) to address specifically the discovery of facts known and opinions held by a testifying expert that were "acquired or developed in anticipation of litigation or for trial."  Fed. R. Civ. P. 26(b)(4) (1970).

The 1970 version of Rule 26(b)(4)(A) permitted interrogatories requesting "the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion."  Fed. R. Civ. P. 26(b)(4)(A) (1970).  The Advisory Committee explained in 1970 that new Rule 26(b)(4) "repudiate[d] the few decisions that have held an expert's information privileged simply because of his status as an expert," and "reject[ed] as ill-considered the decisions which have sought to bring expert information within the work-product doctrine."  Fed. R. Civ. P. 26, advisory committee notes (1970) (Subdivision (b)(4)).  The Advisory Committee cited with approval the Fifth Circuit's decision in United States v. McKay, 372 F.2d 174 (5th Cir. 1968), in which the court rejected a claim of work

11

product over an appraisal report prepared by an expert witness. Id. at 176-77.

The 1970 Advisory Committee noted that a "prohibition against discovery of information held by expert witnesses produces in acute form the very evils that discovery has been created to prevent." Id. The Advisory Committtee elaborated that "[e]ffective cross-examination of an expert witness requires advance preparation," and "effective rebuttal requires advance knowledge of the line of testimony of the other side." Id. "If the latter is foreclosed by a rule against discovery, then the narrowing of issues and elimination of surprise which discovery normally produces are frustrated." Id.[2]

In 2010, Rule 26(b)(4) was amended again. New Rule 26(b)(4)(B) was "added to provide work-product protection under Rule 26(b)(3)(A) and (B) for drafts of expert reports or disclosures." Fed. R. Civ. P. 26, advisory committee notes (2010) (Subdivision (b)(4)).[3] New Rule 26(b)(4)(C) was "added to provide work-product protection for attorney-expert communications regardless of the

---

[2]The Advisory Committee Notes to the 1970 Rule 26(b)(4) state "that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness." Fed. R. Civ. P. 26, advisory committee notes (1970) (Subdivision (b)(4)).

[3]New Rule 26(b)(4)(B) provides: "Trial-Preparation Protection for Draft Reports or Disclosures. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." Fed. R. Civ. P 26(b)(4)(B) (2010).

form of the communications, whether oral, written, electronic, or otherwise." Id.[4]

But the 2010 Advisory Committee cautioned that new Rules 26(b)(4)(B) and (C) "do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions." Id.

The 2010 Advisory Committee elaborated that "the expert's testing of material involved in litigation, and notes of any such testing, would not be exempted from discovery by this rule." Id. "Similarly, inquiry about communications the expert had with anyone other than the party's counsel about the opinions expressed is unaffected by the rule." Id.

Given that the drafters explicitly and specifically address work-product claims with respect to experts in Rule 26(b)(4) and never mention experts in (b)(3), it is difficult to say, as Chevron does, that Rule 26(b)(3)(A) applies to all testifying expert materials in general and that Rule 26(b)(4) merely clarifies that general principle in a specific context. To the contrary, a reading of Rule 26(b)(3)(A) to include testifying experts would render parts of Rule 26(b)(4) superfluous, a result

---

[4]New Rule 26(b)(4)(C) provides: "Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C) (2010).

13

disfavored by our canons of statutory (or here rule) interpretation. See United

States v. Aldrich, 566 F.3d 976, 978 (11th Cir. 2009) ("[S]tatutes should be

construed so that 'no clause, sentence, or word shall be superfluous, void, or

insignificant.'" (quoting United States v. Ballinger, 395 F.3d 1218, 1236 (11th Cir.

2005))); Bouchard Transp. Co. v. Updegraff, 147 F.3d 1344, 1351 (11th Cir. 1998)

("[W]e avoid statutory constructions that render provisions meaningless.").

For example, if Rule 26(b)(3)(A) covered all trial preparation materials

prepared by or for a testifying expert, there would have been little need for the rule

drafters to specifically add work-product protection for draft expert reports and for

attorney-expert communications in Rules 26(b)(4)(B) and (C).  Draft expert reports

and attorney-expert communications would already enjoy work-product protection

under Rule 26(b)(3)(A).

Indeed, an overbroad reading of Rule 26(b)(3)(A) would undermine the

drafters' deliberate choice in Rules 26(b)(4)(B) and (C) to extend work-product

protection to only draft expert reports and attorney-expert communications.  In

crafting Rules 26(b)(4)(B) and (C), the drafters easily could have also extended

work-product status to other testifying expert materials, such as an expert's own

notes or his communications with non-attorneys, such as other experts.  But the

rule drafters did not.  This omission, if anything, reflects a calculated decision not

to extend work-product protection to a testifying expert's notes and

14

communications with non-attorneys.   See United States v. Curbelo, 726 F.3d 1260, 1277 (11th Cir. 2013) ("[T]he negative implication canon, often expressed in the Latin phrase expressio unius est exlusio alterius, . . . . applies where items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence.").

There is good reason why the general work-product doctrine of Rule 26(b)(3)(A) does not cover a testifying expert.  Rule 26(b)(3)(A) traces its roots to Hickman's directive that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." 329 U.S. at 510, 67 S. Ct. at 393 (emphasis added).  Given the need for lawyers to maintain some privacy, the Hickman Court rejected an attempt to obtain "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties."  Id.  The Supreme Court reasoned that if such lawyer materials could be obtained through discovery, "much of what is now put down in writing would remain unwritten.  An attorney's thoughts, heretofore inviolate, would not be his own."  Id. at 511, 675 S. Ct. at 393-94.  The focus of the work-product doctrine in Hickman was to protect the work of lawyers.

In United States v. Nobles, 422 U.S. 225, 95 S. Ct. 2160 (1975), the Supreme Court addressed a report prepared by an investigator.  Id. at 227, 95 S. Ct.

15

at 2164.  While the work-product doctrine "at its core . . . shelters the mental processes of the attorney," the Supreme Court observed that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial."  Id. at 238, 95 S. Ct. at 2170.  The Supreme Court therefore concluded that it is "necessary that the [work-product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."  Id. at 238-39, 95 S. Ct. at 2170.

The Supreme Court in Nobles also noted that Rule 26(b)(3) reflects the view that the work-product doctrine necessarily must also apply "to materials prepared on [the attorney's] behalf."  Id. at 239 n.13, 95 S. Ct. at 2170 n.13.  But for the reasons discussed above, the rule drafters stopped short of protecting all materials prepared by or for a testifying expert.

Unlike an "attorney, consultant, surety, indemnitor, insurer, or agent," see Fed. R. Civ. P. 26(b)(3)(A), a testifying expert's role is to provide independent, impartial, qualified opinion testimony helpful to the trier of fact.  Given that testifying experts offer evidence in court, the opposing side must have the opportunity to challenge the opinions of a testifying expert, including how and why the expert formed a particular opinion.  See Fed. R. Civ. P. 26, advisory committee notes (1970) (Subdivision (b)(4)).  Cloaking all materials prepared by or for a testifying expert under the work-product doctrine inhibits the thorough and

16

sharp cross examination that is vital to our adversary system.  Id.

In sum, neither the text of Rule 26(b)(3)(A) nor its structure, history, and rationale support extending the work-product doctrine to all testifying expert materials.  It is thus no surprise that Chevron and Dr. Hinchee cannot point us to any case holding that Rule 26(b)(3)(A) applies to a testifying expert.  Rather, the Tenth Circuit recently rejected Chevron's and Dr. Hinchee's argument.  In another dispute over expert discovery between the Republic and Chevron, the Tenth Circuit squarely held that the work-product protection of Rule 26(b)(3) does not extend to materials prepared by or for a testifying expert.  Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. § 1782(a), 735 F.3d 1179, 1183-85 (10th Cir. 2013) (affirming the District of Colorado's order compelling production of documents from Bjorn Bjorkman, another expert witness who testified for Chevron in the Lago Agrio litigation in Ecuador).

## C.    Rule 26(a)(2)(B) and the 2010 Amendments

The parties also dispute the impact of Rule 26(a)(2)(B) and the 2010 Amendment to that rule.  Chevron and Dr. Hinchee argue that because the 2010 Amendments narrowed the expert disclosure requirements of Rule 26(a)(2)(B), Dr. Hinchee need not produce his notes and communications with non-attorneys that

17

are at issue in this case.[5]  Accordingly, we discuss the history and current version of Rule 26(a)(2).

In 1993, Rule 26(a) was restructured to add new subsections (1)-(4), which impose "on parties a duty to disclose, without awaiting formal discovery requests, certain basic information that is needed in most cases to prepare for trial or make an informed decision about settlement."  Fed. R. Civ. P. 26, advisory committee notes (1993) (Subdivision (a)).  Rule 26(a)(2)(A) required a party to disclose "the identity" of its testifying expert witness, and Rule 26(a)(2)(B) required that this disclosure must "be accompanied by a written report prepared and signed by the witness."  Fed. R. Civ. P 26(a)(2)(A) and (B) (1993).

Rule 26(a)(2)(B) also required that this expert report contain, inter alia, "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions."  Fed. R. Civ. P. 26(a)(2)(B) (1993).  The 1993 Advisory Committee reasoned that "[g]iven this obligation of disclosure, litigants should no longer be able to argue

---

[5]Chevron and Dr. Hinchee argue that Dr. Hinchee's notes and communications with non-attorneys are protected from discovery under Rule 26(b)(3)(A) and that production of such materials in the past was necessary only because of the expert disclosure requirements of Rule 26(a)(2)(B).  Chevron and Dr. Hinchee contend that because the 2010 Amendment to Rule 26(a)(2)(B) narrowed the expert disclosure requirements in Rule 26(a)(2)(B), production of the documents at issue here is no longer required.  While our conclusion that Rule 26(b)(3)(A) does not apply to a testifying expert rejects the underlying premise of this argument, we also address the 2010 Amendment to Rule 26(a)(2)(B) because it further supports our ultimate conclusion here.

18

that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." Fed. R. Civ. P. 26, advisory committee notes (1993) (Subdivision (a)(2)).

Relying on Rule 26(a)(2)(B)'s "data or other information" language and its accompanying Advisory Committee Note, the majority of courts concluded that the 1993 Amendments to Rule 26 created a bright-line rule requiring disclosure of all information provided to testifying experts, including attorney opinion work-product. See Reg'l Airport Auth. of Louisville v. LFG, LLC, 460 F.3d 697, 714-17 (6th Cir. 2006) ("[W]e now join the overwhelming majority of courts . . . in holding that Rule 26 creates a bight-line rule mandating disclosure of all documents, including attorney opinion work product, given to testifying experts." (internal quotation marks omitted)).

For example, after the enactment of Rule 26(a)(2)(B) in 1993, courts ordered the production of communications between attorneys and testifying experts, even if these communications contained attorney opinion work-product. See, e.g., In re Pioneer Hi-Bred Int'l, Inc., 238 F.3d 1370, 1375 (Fed. Cir. 2001). After 1993, courts also ordered the production of draft expert reports, even though such drafts could reveal the opinion work-product of attorneys. See, e.g., Elm Grove Coal Co. v. Director, O.W.C.P, 480 F.3d 278, 301-303 (4th Cir. 2007) ("In sum, draft expert

19

reports prepared by counsel and provided to testifying experts, and attorney-expert communications that explain the lawyer's concept of the underlying facts, or his view of the opinions expected from such experts, are not entitled to protection under the work product doctrine.").[6]   One net result was that the courts' broad interpretation of the "other information" language in Rule 26(a)(2)(B) undermined the protection of attorney opinion work-product afforded in Rule 26(b)(3).

To alter the outcome of these cases, the 2010 Amendments did two things. First, as outlined above, the drafters added Rules 26(b)(4)(B) and (C) to protect draft expert reports and attorney-expert communications as work product.  Second, the drafters changed the language of Rule 26(a)(2)(B) from "data or other information" to "facts or data."  This change rejects the outcome reached by cases that relied on the old "other information" language in Rule 26(a)(2)(B) to compel the production of draft expert reports and communications between attorneys and experts.  Rule 26(a)(2)(B) was changed so that it would not conflict with new Rules 26(b)(4)(B) and (C), which now expressly exempt draft reports and attorney-expert communications from discovery.

As the 2010 Advisory Committee stated: the amendment to Rule 26(a)(2)(B) "is intended to alter the outcome in cases that have relied on the 1993 formulation

---

[6]By contrast, several courts before 1993 apparently concluded that Rule 26(b)(3) prohibited the discovery of attorney opinion work-product, even when provided to a testifying expert.  See, e.g., Bogosian v. Gulf Oil Corp., 738 F.2d 587, 594-95 (3d Cir. 1984).

in requiring disclosure of all attorney-expert communications and draft reports." Rule 26, advisory committee notes (2010). "The amendments to Rule 26(b)(4) make this change explicit by providing work-product protection against discovery regarding draft reports and disclosures or attorney-expert communications." Id.

The 2010 Advisory Committee explained the background for this change: after "[m]any courts read the disclosure provision [of Rule 26(a)(2)] to authorize discovery of all communications between counsel and expert witnesses and all draft reports," the Committee was told "repeatedly that routine discovery into attorney-expert communications and draft reports has had undesirable effects." Id. The 2010 Advisory Committee elaborated that "[c]osts have risen," as "[a]ttorneys may employ two sets of experts—one for purposes of consultation and another to testify at trial—because disclosure of their collaborative interactions with expert consultants would reveal their most sensitive and confidential case analyses." Id. Moreover, "attorneys often feel compelled to adopt a guarded attitude toward their interaction with testifying experts that impedes effective communication, and experts adopt strategies that protect against discovery but also interfere with their work." Id.

None of this suggests the drafters' intent to confer work-product status on the notes of a testifying expert or on a testifying expert's communications with other experts. Rather, the 2010 Amendment to Rule 26(a)(2)(B) was intended to

protect the opinion work-product of attorneys in the context of expert discovery. As the 2010 Advisory Committee put it, "[t]he refocus of disclosure on 'facts or data' is meant to limit disclosure to material of a factual nature by excluding <u>theories or mental impressions of counsel</u>." <u>Id.</u> (emphasis added). At the same time, the term "facts or data" should "be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." <u>Id.</u> And Rule 26(a)(2)(B)'s "disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." <u>Id.</u> In other words, the term "facts or data" includes all materials considered by a testifying expert, except the core opinion work-product of attorneys.

Notably here, Chevron and Dr. Hinchee do not argue that the discovery materials at issue in this case contain the core opinion work-product of Chevron attorneys. Instead, by withholding Dr. Hinchee's personal notes and communications with other experts, Chevron and Dr. Hinchee attempt to shield the theories and mental impressions of Dr. Hinchee and his fellow testifying experts. Rule 26 provides no basis for this, neither before nor after the 2010 Amendments.

To the extent any attorney core opinion work-product is embedded in the 1,200 documents at issue here, Chevron and Dr. Hinchee may appropriately redact such portions—subject to providing a privilege log under Rule 26(b)(5) and

22

submitting the materials for <u>in camera</u> review if requested by the Republic and directed by the district court.  Any redaction beyond attorney core opinion work-product is not allowed.

## IV. CONCLUSION

For the reasons set forth above, we affirm the district court's order compelling discovery.

**AFFIRMED.**