FILED
United States Court of Appeals
Tenth Circuit

November 13, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

IN RE: APPLICATION OF THE
REPUBLIC OF ECUADOR; DIEGO
GARCIA CARRION, the Attorney
General of the Republic of Ecuador,

        Petitioners - Appellees,

v.

For the Issuance of a Subpoena Under
28 U.S.C. § 1782(a) for the Taking of
a Deposition of and the Production of
Documents by BJORN BJORKMAN
for use in a foreign proceeding,

        Respondent - Appellant.

------------------------

CHEVRON CORPORATION,

        Intervenor - Appellant.

No. 12-1402

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### (D.C. No. 11-CV–01470-WYD-MEH)

Theodore J. Boutrous Jr. of Gibson, Dunn & Crutcher, L.L.P., Los Angeles,
California, (Ethan D. Dettmer of Gibson, Dunn & Crutcher, L.L.P, San Francisco,
California and Robert C. Blume of Gibson, Dunn & Crutcher, L.L.P., Denver,
Colorado, with him on the briefs), for Respondent - Appellant and Intervenor
Appellant.

Gene C. Schaerr (and Eric W. Bloom of Winston & Strawn, L.L.P., on the brief), Washington, D.C., for Petitioners - Appellees.

---

Before **KELLY**, **McKAY**, and **MATHESON**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Intervenor-Appellant Chevron Corporation appeals from a district court order granting a motion to compel production of documents pursuant to subpoenas issued under 28 U.S.C. § 1782. Section 1782 allows for discovery of documents to be used in a foreign proceeding. Petitioners-Appellees, the Republic of Ecuador and its Attorney General, Dr. Diego García Carrión (collectively, "the Republic") sought the discovery to defend an $18.2 billion judgment against Chevron by an Ecuadorian court. Chevron is seeking relief from that judgment pursuant to investment treaty arbitration under United Nations' rules. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm the district court's order.

## Background

Since the early 1990s, Chevron and its predecessor company, Texaco, Inc.,[1]

---

[1] Chevron merged with Texaco in 2001 and assumed liability for its operations. Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 388 n.1, 389 n.3 (2d Cir. 2011).

have defended litigation concerning Texaco's operation in Ecuador and the environmental contamination it allegedly produced. This litigation started in the Southern District of New York but eventually found its way to the courts of Lago Agrio, Ecuador. (For a detailed description of the New York litigation, see Aguinda v. Texaco, Inc., 303 F.3d 470 (2d Cir. 2002)). In February 2011, the court in Lago Agrio entered an $18.2 billion judgment against Chevron, currently on appeal.

Prior to the Lago Agrio judgment, in September 2009, Chevron commenced arbitration proceedings against the Republic under the U.S.–Ecuador Bilateral Investment Treaty, pursuant to the rules of the United Nations Commission on International Trade Law. Chevron invoked this procedure to stop the alleged "due process, fair treatment, and international-law rights" violations it allegedly suffered at the hands of Ecuadorian courts. Aplt. Br. 12. In February 2011, immediately following the Lago Agrio judgment, the arbitral tribunal ordered that the Republic stay all efforts to enforce the Lago Agrio judgment, pending further order of the tribunal.

This is where the underlying litigation currently stands. However, gearing up for arbitration, both sides have filed numerous 28 U.S.C. § 1782 applications in district courts throughout the United States seeking discovery of evidence for use in a foreign proceeding. In June 2011, the Republic filed a § 1782 application in the District of Colorado seeking "discovery from Bjorn Bjorkman to aid the

Republic in defending the validity of the *Lago Agrio* judgment." I Jt. App. 42.
The Republic alleged that Mr. Bjorkman served as one of Chevron's chief experts
and that the Ecuadorian court explicitly relied on his opinions. Id. at 42-43. Mr.
Bjorkman and Chevron, as an interested party, responded challenging discovery,
and the district court referred the Republic's application to a magistrate judge.

During the Lago Agrio trial, Chevron retained Mr. Bjorkman, "an ecologist
specializing in ecological and human health risk assessments, site investigations,
and biological and biodiversity investigations." Aplt. Br. 15. In this capacity,
Mr. Bjorkman prepared and received documents and communications "created in
anticipation of litigation with the intent that they would be kept confidential." Id.
at 15-16. These documents and communications came from a variety of sources
in Chevron's litigation team, including "lawyers, in-house scientists, consultants,
and expert witnesses." Id. at 17. In the instant action, Chevron argued before the
magistrate judge that the 2010 revisions to Fed. R. Civ. P. 26 brought materials
prepared by or provided to Mr. Bjorkman under the protection of the work-
product doctrine.

In August 2011, the magistrate judge granted the Republic's application,
rejecting Chevron's argument and noting that Rule 26 "does not preclude the
disclosure of information constituting the basis for a report, even though prepared
for use in trial." I Jt. App. 21. The district court adopted and affirmed the
magistrate's order. Pursuant to this order, Chevron produced "all of the facts and

data [Mr. Bjorkman] considered in forming his expert opinions." Aplt. Br. 2.

However, Chevron withheld thousands of documents that it believed fell under

Rule 26's work-product doctrine. Claiming this violated the discovery order, the

Republic filed a motion to compel further production. In January 2012, the

magistrate judge partially granted the Republic's motion. Relevant to this appeal,

the magistrate judge held that:

> (1) Chevron may properly withhold drafts of Mr. Bjorkman's expert reports and disclosures, in whatever form, under Rule 26(b)(4)(B);
>
> (2) Chevron may properly withhold documents containing communications between Mr. Bjorkman and Chevron's attorneys under Rule 26(b)(4)(C); however, Chevron may not withhold communications between Mr. Bjorkman and non-attorneys; and
>
> (3) Rule 26(b)(3) did not provide work-product protection to all documents in the hands of a reporting expert, only those documents specifically covered by Rules 26(b)(4)(B) and (C) were so protected.

Republic of Ecuador v. Bjorkman, No. 11-cv-01470, 2012 WL 12755, at *4–6 (D.

Colo. Jan. 4, 2012); I Jt. App. 28-31. Specifically, the magistrate judge held that

the intention of Rule 26 is to "protect the mental impressions and legal theories of

a party's *attorney*, not its expert." Id. at *6. With that premise, the magistrate

judge concluded that Chevron "may not withhold any documents or information

based upon the 'work product doctrine' set forth in Rule 26(b)(3), except those

specifically protected by Rules 26(b)(4)(B) and (C)." Id. On October 4, 2012,

the district court affirmed and adopted the magistrate judge's recommendation in full. I Jt. App. 35. Mr. Bjorkman and Chevron timely appealed the district court's October 4, 2012 order to this court.

Thereafter, Chevron sought to stay discovery pending review by this court. The district court denied this request and ordered Chevron to produce all documents subject to the October 4, 2012 order not yet produced. On the parties' motion, the magistrate judge entered a stipulated protective order, limiting the Republic's use of materials received from Mr. Bjorkman to "conducting the Bilateral Investment Treaty Arbitration." I Jt. App. 36. While this appeal was pending, the Republic filed a second motion to compel, alleging that Chevron continued to improperly withhold documents that fell under the October 4, 2012 order. The magistrate judge issued two more orders, in January and April 2013, clarifying the scope of the October 4, 2012 order and compelling further production. See Republic of Ecuador v. Bjorkman, No. 11-cv-01470, 2013 WL 50430 (D. Colo. Jan. 3, 2013). Chevron never objected to the January and April 2013 orders under Fed. R. Civ. P. 72, and the district court never adopted them.

Discussion

I.    Jurisdiction

Although the parties did not challenge this court's jurisdiction, we raised

the issue sua sponte and have the benefit of supplemental briefing.  See Smith v. Rail Link, Inc., 697 F.3d 1304, 1312-13 (10th Cir. 2012).   Absent certain exceptions, "federal appellate courts have jurisdiction solely over appeals from final decisions of the district courts of the United States."  Rekstad v. First Bank System, Inc., 238 F.3d 1259, 1261 (10th Cir. 2001) (internal quotation ommitted).  A decision is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  W. Energy Alliance, 709 F.3d at 1047 (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 467 (1978)).  While the district court's October 4, 2012 order compelling the discovery at issue appears on its face "final," the magistrate judge's January and April 2013 orders compelling further discovery call its finality into question.

Initially we note that in a § 1782 proceeding, there is nothing to be done "on the merits."  Section 1782 empowers a district court to order a person residing within its district to "give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782.  The only issue before the district court is discovery; the underlying litigation rests before a foreign tribunal.  See Bayer AG v. Betachem, Inc., 173 F.3d 188, 189 n.1 (3d Cir. 1999).

In Phillips v. Beierwaltes, this court stated without qualification that § 1782 "orders are considered final and appealable to this court."  466 F.3d 1217, 1220 (10th Cir. 2006).  However, we were not faced with the circumstances we face

here—a § 1782 order by a district court followed by additional orders by a magistrate judge concerning the same § 1782 application.

The Republic argues that a § 1782 order is not a "final decision" so long as "further proceedings [are] still underway in the district court." Aplee. Supp. Br. 7. However, the cases it cites do not hold that a district court's § 1782 order cannot be "final" if subject to ongoing dispute about its coverage and scope before a magistrate judge. The Ninth Circuit, in In re Premises Located at 840 140th Ave. NE, noted that a § 1782 order is final "[o]nce the district court has ruled on the parties' motions concerning the evidentiary requests." 634 F.3d at 566. Here, once the district court affirmatively decided the proper scope of discovery under the Republic's application, it disposed of all "evidentiary requests."[2] Moreover, the Seventh Circuit stated in Heraeus Kulzer, GmbH v. Biomet, Inc., that, in the context of a § 1782 application, "when no further proceedings are contemplated, the court's last order, even if it is a discovery order, is an appealable final order." 633 F.3d 591, 593 (7th Cir. 2011). In this case, the district court's "last order" was its October 4, 2012 order. The district court never adopted the magistrate judge's January and April 2013 orders as its

---

[2] The district court decided the proper scope of discovery in its October 4, 2012 order by adopting the magistrate judge's January 2012 recommendation that only documents protected by Rules 26(b)(4)(B) and (C) were privileged. The magistrate judge's January and April 2013 orders merely clarified the scope of the district court's order and ordered Chevron to produce additional documents thereunder. Supp. App. 20. This appeal hinges on the discovery addressed in the October 4, 2012 order.

own; consequently, neither of those orders are "final decisions of the district court[]," appealable to this court. 28 U.S.C. § 1291; see Phillips, 466 F.3d at 1222 (holding that a magistrate judge's § 1782 discover order is not appealable unless and until the district court adopts it). The district court's October 4, 2012 order is thus the last definitive word and a "final decision" under 28 U.S.C. § 1291. We proceed to the merits.

II.    Rule 26

We review de novo the district court's interpretation of the Federal Rules of Civil Procedure. Esposito v. United States, 368 F.3d 1271, 1275 (10th Cir. 2004).

Chevron argues that the 2010 revisions to the Federal Rules caused a sea change in the discoverability of documents held by experts. It argues that the Rule 26(b)(3)(A)'s "by or for another party or its representative" language protects trial preparation materials prepared by or provided to a testifying expert. Aplt. Br. 25. Further, it argues that the amendment to Rule 26(a)(2)(B)(ii)'s reporting standard was intended to make clear that reporting experts are protected by the work-product doctrine. Aplt. Br. at 26-29. Finally, it argues that the two limited protections of Rules 26(b)(4)(B) and (C) are not the exclusive protections for expert materials but merely "*examples* of the broader protection provided by Rule 26(b)(3)(A)." Aplt. Br. at 21. We disagree that the 2010 amendments produced such changes.

As with any exercise in statutory or rule interpretation, we start with the plain language of the text itself. United States v. Ceballos-Martinez, 371 F.3d 713, 716 (10th Cir. 2004). Plain language does not require us, however, to "wear blinders to the context in which a word or phrase or sentence is used." Id. Rather, we must interpret a "choice of words in the context that [Congress] chose to use." Id. Because Chevron relies on the change from one set of Rules to the next, we look to the Advisory Committee's comments to place the 2010 revisions in context. See Esposito, 368 F.3d at 1275 (noting that the Advisory Committee's comments are entitled to weight in determining congressional purpose).

We look first to the Rules themselves. Rule 26(b)(3)(A) addresses the work-product doctrine:

> (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

Fed. R. Civ. P. 26(b)(3)(A). Whether this extends to a party's expert is the central issue of this appeal. However, other portions of Rule 26 make clear that some forms of expert materials are not immune to discovery. Rule 26(a), which provides for mandatory disclosures, requires a party to disclose the identity of any expert it intends to call at trial and to also provide:

> (B) . . . a written report . . . [that] must contain: . . . (ii) the facts or data considered by the witness in forming [its

- 10 -

opinion] . . . .

Fed. R. Civ. P. 26(a)(2)(B)(ii).

Finally, Rule 26(b)(4) makes clear that some forms of expert materials are exempt from Rule 26(a)(2)'s mandatory disclosures:

> (B) *Trial-Preparation Protection for Draft Reports or Disclosures.* Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2) . . . .
>
> (C) *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witness.* Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B) . . . .

Fed. R. Civ. P. 26(b)(4)(B) & (C). Rule 26(b)(4)(C) goes on to list three narrow exceptions to its coverage. Fed. R. Civ. P. 26(b)(4)(C)(i)–(iii).

*A.      Rule 26(b)(3)(A)*

Chevron argues that the "by or for another party or its representative" language of Rule 26(b)(3)(A) clearly includes materials prepared by or for an expert witness in anticipation of litigation. Aplt. Br. 26. It argues that even before 2010, there existed a "work product protection for expert witness materials." Id. We fail to see how the Rules or interpreting cases demonstrate that expert materials are protected under Rule 26(b)(3)'s work-product doctrine.

First, the plain language of Rule 26(b)(3) does not clearly mandate the result Chevron seeks. The phrase, "party or its representatives," implies agency, and each of the six listed examples connotes someone acting in either an agency

- 11 -

or fiduciary capacity for the "party or its representative."  Clearly, agents of a party or its representative, who stand in the legal shoes of the party, are entitled to the same work-product protections as the party itself.  See United States v. Nobles, 422 U.S. 225, 238-39 (1975) ("It is therefore necessary that the [work-product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.").  No showing has been made that an expert would have capacity to act on behalf of a party in this case.

Second, the traditional understanding of the work-product doctrine militates against concluding that expert materials are protected under Rule 26(b)(3).  The Supreme Court has stated that, "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."  Nobles, 422 U.S. at 238.  We have said the same: "the work product doctrine is intended only to guard against divulging the attorney's strategies or legal impressions."  Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).  This understanding of the work-product doctrine was "substantially incorporated in Federal Rule of Civil Procedure 26(b)(3)."  Upjohn Co. v. United States, 449 U.S. 383, 398 (1981).  Ever since the Supreme Court first articulated the work-product doctrine in Hickman v. Taylor, the scope of discovery under Rule 26 has been understood to preclude "inquiries into the files and the mental impressions of an attorney."  329 U.S. 495, 510 (1947).

Despite this focus on an attorney's mental impressions, courts applying the Hickman doctrine struggled with whether the mental impressions of non-attorneys were also protected, particularly when litigants relied extensively on expert opinions. See Fed. R. Civ. P. 26(b)(4) (1970 Comments). Many federal courts held that materials produced by experts were protected under the work-product doctrine. See, e.g., Carpenter-Trant Drilling Co. v. Magnolia Petroleum Corp., 23 F.R.D. 257, 262 (D. Neb. 1959); United States v. Certain Parcles of Land, 25 F.R.D. 192, 193 (N.D. Cal. 1959); United Air Lines, Inc. v. United States, 26 F.R.D. 213, 218 (D. Del. 1960); cf. United States v. McKay, 372 F.2d 174, 177 (5th Cir. 1967) (reversing the district court's holding that an appraisal report was protected as "the work product of the expert witness").

In 1970, the Advisory Committee expressly rejected the holdings of these cases. The 1970 revised Rules were the first to incorporate a version of the Hickman work-product doctrine. The drafters noted that leaving the application of the doctrine to caselaw had grown troublesome given the "confusion and disagreement as to the scope of the Hickman work-product doctrine, particularly whether it extends beyond work actually performed by lawyers." Fed. R. Civ. P. 26(b)(3) (1970 Comments). By providing a rules-based work-product doctrine, the Advisory Committee expressly "reject[ed] as ill-considered the decisions which have sought to bring expert information within the work-product doctrine." Fed. R. Civ. P. 26(b)(4) (1970 Comments).

The 1970 revisers made clear that Rule 26(b)(3)'s work-product doctrine extends past attorneys to "a party or any representative acting on his behalf." Fed. R. Civ. P. 26(b)(3). (1970 Comments). At the same time, however, they made plainly clear that this protection did not "bring expert information within the work-product doctrine." Fed. R. Civ. P. 26(b)(4) (1970 Comments). Chevron does not point to contrary authority that refutes this original understanding of Rule 26(b)(3).

*B.      Rules 26(a)(2)(B), 26(b)(4)(B) & (C)*

Chevron next argues that the 2010 revisions to Rules 26(a)(2) and (b)(4) restored broad work-product protection to expert materials. First, we address the changes to Rule 26(a)(2). In 1993, Rules 26(a)(1)–(4) were added, placing on each party the burden of producing "required disclosures" before being served with formal discovery. Among these disclosures is the requirement that any person retained or specially employed to provide expert testimony prepare a written report detailing that testimony. Fed. R. Civ. P. 26(a)(2)(B). As codified in 1993, Rule 26(a)(2) required that an expert's report contain "the data or other information considered by the witness in forming" his or her opinion. Fed. R. Civ. P. 26(a)(2)(B)(ii) (1993 revised version). The drafters made the purpose of this broadly formulated "other information" standard clear:

> Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or

not relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

Fed. R. Civ. P. 26(a)(2) (1993 Comments).

While the 1993 amendments eliminated perceived restrictions in expert discovery, by 2010, the Advisory Committee believed that some courts had taken Rule 26(a)(2)(B)(ii) too far, resulting in "undesirable effects." Fed. R. Civ. P. 26 (2010 Comments). Some courts held that drafts of expert reports were discoverable under Rule 26(a)(2)(B)(ii). See, e.g., Elm Grove Coal Co. v. Director, O.W.C.P., 480 F.3d 278, 303 (4th Cir. 2007); Occulto v. Adamar of N.J., Inc., 125 F.R.D. 611, 612 (D.N.J. 1989). Other courts held that communications between an expert and a party's attorney—even communications containing the attorney's mental impression—were discoverable under Rule 26(a)(2)(B)(ii). See, e.g., Elm Grove Coal Co., 480 F.3d at 303; In re Pioneer Hi-Bred Intern., Inc., 238 F.3d 1370, 1375 (Fed. Cir. 2001); Intermedics, Inc. v. Ventritex, Inc., 139 F.R.D. 384, 387 (N.D. Cal. 1991). These decisions, according to the Advisory Committee, had the effect of raising the cost of litigation and causing attorneys to be overly cautious in their interaction with experts. Fed. R. Civ. P. 26 (2010 Comments).

Thus, in 2010 the Advisory Committee abandoned the "facts or other information" standard for expert reporting and adopted the "facts or data" standard found in the current version of the Rules. Fed. R. Civ. P. 26(a)(2)(B)(ii)

- 15 -

(2010 revised version). Through this change, the Advisory Committee "intended to alter the outcome in cases that have relied on the 1993 formulation in requiring disclosure of all attorney–expert communications and draft reports." Fed. R. Civ. P. 26(a)(2)(B) (2010 Comments). In conjunction, the drafters amended Rule 26(b)(4) to "make this change explicit." Id. They provided two exemptions to disclosure: "Trial-Preparation Protection for Draft Reports or Disclosures" (Rule 26(b)(4)(B)); and "Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witness" (Rule 26(b)(4)(C)).

Contrary to Chevron's assertion that these revisions were intended to have wide-ranging effects, the revisions appear to alter only the outcome of cases either allowing discovery of draft reports or attorney–expert communications. Fed. R. Civ. P. 26 (2010 Comments). Chevron cannot point to any cases allowing discovery of the type sought here that Rule 26(b)(4) silently overturned. Rather, Chevron's contention that Rules 26(b)(4)(B) and (C) are merely "examples" is irreconcilable with the above stated intentions. Had the drafters believed that expert materials were protected more broadly under Rule 26(b)(3) (something they believed "ill-considered" in 1970), then they could have chosen to bolster the protections afforded under that subdivision rather than providing two explicit protections in subdivision (b)(4). Cf., Joseph v. Wiles, 223 F.3d 1155, 1161 (10th Cir. 2006) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed

that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotations omitted).

Other comments make clear that the protections of Rules 26(b)(4)(B) and (C) are the exclusive protections afforded to expert trial-preparation materials. "Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions." Fed. R. Civ. P. 26(b)(4) (2010 Comments). If Rules 26(b)(4)(B) and (C) were not exclusive, then such a statement would be unlikely.

Thus, the underlying purpose of the 2010 revision was to return the work-product doctrine to its traditional understanding. The drafters articulated: "The refocus of disclosure on 'facts and data' is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel." Fed. R. Civ. P. 26(a)(2)(B) (2010 Comments). Thus, Rule 26(b)(4), especially subdivision (C), restores the core understanding that the work-product doctrine solely protects the inner workings of an attorney's mind. Though Chevron argues that "facts or data" is to be construed narrowly to limit discovery to the bare-bones factual information underlying an expert's opinion, Aplt. Br. 29, the comments reinforce the strong preference for broad discovery of expert materials: "[T]he intention is that 'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." Fed. R. Civ. P. 26(a)(2)(B) (2010 Comments). This

indifference as to the source of material refutes Chevron's contention that documents provided to an expert by a party are protected under Rule 26(b)(3). And materials containing "factual ingredients" include far more than materials made up solely of "facts or data."

AFFIRMED.[3] We GRANT the Republic's motion to file a supplemental appendix.

---

[3] Because we affirm on the merits, we have no need to reach the Republic's contention that Chevron is judicially estopped from raising the arguments it advances here.