**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

REPUBLIC OF ECUADOR; DIEGO
GARCIA CARRION, DR., Attorney
General of the Republic of Ecuador,
*Plaintiffs-Appellees*,

v.

DOUGLAS M. MACKAY; CHEVRON
CORPORATION,
*Defendants-Appellants*.

No. 12-15572

D.C. No.
1:12-mc-00008-
LJO-GSA

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

THE REPUBLIC OF ECUADOR; DIEGO
GARCIA CARRION, DR., Attorney
General of the Republic of Ecuador,
*Applicants-Appellees*,

v.

MICHAEL A. KELSH, DR.; EXPONENT,
INC., DBA Delaware Exponent, Inc.,
*Respondents-Appellants*,

and

CHEVRON CORPORATION,
*Intervenor-Appellant*.

No. 12-15848

D.C. No.
3:11-mc-80171-
CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, Senior District Judge, Presiding

Argued and Submitted
December 4, 2013—San Francisco, California

Filed January 31, 2014

Before: Barry G. Silverman, Consuelo M. Callahan,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Callahan

# SUMMARY[*]

## Discovery

The panel affirmed two district courts' decisions ordering the production of documents for use in a foreign proceeding under 28 U.S.C. § 1782.

The panel held that the 2010 amendments to Federal Rule of Civil Procedure 26 did not fundamentally change the scope of work product protection for expert materials. It therefore rejected the argument that the district courts erred because many of the documents at issue were presumptively immune from discovery under Rule 26(b)(3)'s protection for trial preparation materials. Arriving at the same result as two other circuits, the panel held that Rule 26(b)(3) does not provide presumptive protection for all testifying expert materials as trial preparation materials.

## COUNSEL

Theodore J. Boutrous, Jr. (argued), Gibson Dunn & Crutcher, LLP, Los Angeles, California; Ethan Douglas Dettmer, Joshua S. Lipshutz, and Enrique Antonio Monagas, Gibson Dunn & Crutcher, LLP, San Francisco, California, for Intervenor-Appellant and Respondents-Appellants.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Gene C. Schaerr (argued) and Eric Bloom, Winston & Strawn, Washington, D.C.; Richard A. Lapping, Winston & Strawn, San Francisco, California, for Applicants-Appellees.

**OPINION**

CALLAHAN, Circuit Judge:

Chevron Corporation and two of its expert witnesses, Douglas M. Mackay and Michael A. Kelsh (collectively, "Chevron"), appeal from two district court decisions ordering the production of documents. The Republic of Ecuador (the "Republic") and Diego Garcia Carrion (collectively, the "Applicants") sought the discovery for use in a foreign proceeding under 28 U.S.C. § 1782. Contending that the 2010 amendments to Federal Rule of Civil Procedure 26 fundamentally changed the scope of work product protection for expert materials, Chevron argues that the district courts erred because many of the documents at issue were presumptively immune from discovery under Rule 26(b)(3)'s protection for trial preparation materials. We find no merit to Chevron's arguments, and accordingly, we affirm the district courts.

I

A

The parties are involved in a long-running legal dispute that has stretched across multiple decades, tribunals, and continents. This appeal represents one of many skirmishes in the ongoing conflict, including two nearly identical appeals that were recently decided by the Tenth and Eleventh

Circuits. *Republic of Ecuador v. Hinchee*, __ F.3d __, No. 12-16216, 2013 WL 6655490 (11th Cir. Dec. 18, 2013); *Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a) (Bjorkman)*, 735 F.3d 1179 (10th Cir. 2013). We briefly review the underlying facts to provide context for the issue on appeal.

In 1964, a subsidiary of Texaco, Inc. ("Texaco") began oil exploration and drilling in eastern Ecuador. *Chevron Corp. v. Berlinger*, 629 F.3d 297, 301 (2d Cir. 2011). Texaco subsequently began operating a consortium in the area that conducted drilling activities and operated a pipeline. *Id.* Ecuador's state-owned oil company, Petroecuador, acquired an interest in the consortium, subsequently becoming the majority shareholder in 1976, and eventually acquired full ownership in 1990. *Id.* Texaco ceased operating the consortium in 1992. *Chevron Corp. v. Naranjo*, 667 F.3d 232, 235 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 423 (2012).

In 1993, a group of Ecuadorians brought a class action suit in the Southern District of New York against Texaco seeking billions of dollars in damages for environmental pollution and contamination allegedly caused by the consortium's activities (the "*Aguinda*" action). *Berlinger*, 629 F.3d at 301; *see generally Aguinda v. Texaco, Inc.*, 303 F.3d 470 (2d Cir. 2002). At Texaco's urging and over the plaintiffs' opposition, the case was dismissed on forum non conveniens grounds in 2001 with Texaco consenting to jurisdiction in Ecuador. *See Berlinger*, 629 F.3d at 301–02 & n.2.

In the interim, Texaco entered into a settlement agreement with the Republic and Petroecuador in 1998, agreeing to perform remediation projects in exchange for a release from

liability. *Naranjo*, 667 F.3d at 235. In 2001, Chevron purchased Texaco. *Id.* at 235 n.2. Chevron has since asserted that the release covered any public claims related to the environmental harm because, at that time, the Republic owned the rights to any such claims. For their part, the *Aguinda* plaintiffs entered into an agreement where they waived any claims against the Republic and Petroecuador (which was allegedly responsible for a significant amount of the pollution). *Chevron v. Donziger*, 768 F. Supp. 2d 581, 597–99 & n.18 (S.D.N.Y. 2011), *rev'd sub nom. Naranjo*, 667 F.3d at 234.

In 2003, a second group of Ecuadorians, including many of the *Aguinda* plaintiffs, brought suit against Chevron in Lago Agrio, Ecuador (the "*Lago Agrio*" action). *Berlinger*, 629 F.3d at 302. Invoking a 1999 environmental law, the *Lago Agrio* plaintiffs asserted public claims that Chevron contends the Republic had previously released. *Id.* The *Lago Agrio* court ordered an independent expert to conduct a global damages assessment. *Donziger*, 768 F. Supp. 2d at 603; *Berlinger*, 629 F.3d at 302. The court eventually entered a judgment of over $18 billion against Chevron. The judgment was recently cut in half but otherwise upheld by Ecuador's highest court. *Hinchee*, 2013 WL 6655490, at *1.

While the *Lago Agrio* action was ongoing, the plaintiffs' attorneys commissioned a documentary which was eventually released as *Crude: The Real Price of Oil*. *Naranjo*, 667 F.3d at 236. Based on some of the footage, Chevron engaged in a broad-based – and largely successful – effort to obtain the outtakes of the film and related materials through applications under 28 U.S.C. § 1782. *Id.* Chevron contends that the outtakes show widespread fraud by the plaintiffs' attorneys and the Ecuadorian judiciary. *Id.* at 237. Chevron presented

this evidence to the *Lago Agrio* court, but the court continued to rely on the independent expert's data and returned the substantial judgment against Chevron. *Id.* One of Chevron's responses to the *Lago Agrio* action was a demand for arbitration against the Republic pursuant to the bilateral investment treaty between the United States and Ecuador ("BIT Arbitration"). *Berlinger*, 629 F.3d at 303.

B

On June 3, 2011, the Applicants filed a § 1782 application seeking discovery from Mackay in the Eastern District of California for use in the BIT Arbitration (the "*Mackay*" action). They filed a similar application in the Northern District of California on June 21, 2011, seeking discovery from Kelsh and his former employer, Exponent, Inc. (the "*Kelsh*" action). Chevron intervened in both actions.

Mackay and Kelsh both served as Chevron's experts in the *Lago Agrio* action. Mackay is an adjunct professor at the University of California-Davis who offered opinions regarding the state of the soil and groundwater in the affected areas, as well as the parties' respective sampling and analysis. Kelsh is an epidemiologist who submitted reports rebutting the independent expert's assessment regarding health problems allegedly caused by Texaco's operations. Chevron submitted reports from both experts to the tribunal in the BIT Arbitration. The Applicants contend that the discovery will show that Chevron and its experts engaged in selective sampling to achieve favorable results.

Both district courts granted the § 1782 applications. Chevron subsequently produced hundreds of thousands of pages of documents but also withheld thousands of

documents, asserting that they were privileged. The Applicants objected to Chevron's privilege claims, and the parties eventually raised their disputes with the district courts.

In the *Mackay* action, the magistrate judge found that Chevron was required to produce all documents listed on its privilege log other than Mackay's draft reports and certain "[c]ommunications directly between Dr. Mackay and counsel." The district court denied Chevron's motion for reconsideration.

In the *Kelsh* action, the magistrate judge found that Chevron did not have to produce draft reports, draft worksheets, communications among Kelsh and his assistants, or communications between Kelsh or his assistants and Chevron attorneys. *In re Republic of Ecuador (Kelsh)*, 280 F.R.D. 506, 512–14 (N.D. Cal. 2012). The magistrate judge, however, otherwise ordered Chevron to produce the documents it was withholding. *Id.* at 516. The district court subsequently affirmed the magistrate judge's order. Chevron now appeals, and we have jurisdiction pursuant to 28 U.S.C. § 1291. *See In re Premises Located at 840 140th Ave. NE*, 634 F.3d 557, 565–66 (9th Cir. 2011).

II

We typically review a district court's discovery rulings for abuse of discretion. *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1245 (9th Cir. 2012). However, where the question is not whether the district court properly exercised its discretion under a federal rule, but rather turns on the legal issue of whether the court properly interpreted the rule's requirements, we review that question de novo. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

III

Chevron argues that the plain language of Rule 26(b)(3) generally protects expert materials as trial preparation materials prepared "by or for" a party or a party's representative.  It urges us to confine our review to the text of the rule but contends that even if we look beyond it, the notes of the Advisory Committee on the Federal Rules of Civil Procedure support its interpretation.  Chevron makes no arguments specific to the documents at issue or the experts involved in these proceedings; rather, the crux of Chevron's argument is that Rule 26(b)(3) always provides presumptive protection for all testifying expert materials because they are necessarily prepared "by or for" a party or its representative.

We apply the "traditional tools of statutory construction" to interpret the federal rules.  *See United States v. Petri*, 731 F.3d 833, 839 (9th Cir. 2013) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 163 (1988)), *cert. denied*, 134 S. Ct. 681 (2013).  "The first step in construing the meaning of a statute is to determine whether the language at issue has a plain meaning."  *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008).  "When interpreting a statute, words and phrases must not be read in isolation, but with an eye toward the 'purpose and context of the statute.'" *Petri*, 731 F.3d at 839 (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)).  An interpretation that gives effect to every clause is generally preferable to one that does not. *Cf. Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1177 (2013).  Additionally, "[i]t is a 'cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant.'"  *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 643 (9th Cir. 2012) (quoting *Spencer*

*Enters., Inc. v. United States*, 345 F.3d 683, 691 (9th Cir. 2003)) (internal quotation marks omitted).

Where "the statute's language is plain" we do not consider "the legislative history or any other extrinsic material." *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1042 (9th Cir. 2013) (en banc) (quoting *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005), and *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). "Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *McDonald*, 548 F.3d at 780 (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)). To determine whether there is an ambiguity, we must assess whether there is "an uncertainty of meaning or intention." *Id.* at 781 (citation and alteration marks omitted).

The federal procedural and evidentiary rules are accompanied by a unique form of legislative history. The advisory committees draft and recommend rule changes to the Judicial Conference. 28 U.S.C. § 2073(a)(2). If adopted by the Supreme Court, the recommendations become law absent Congressional action. *See* §§ 2072(a), 2074(a). Along with their recommended rule changes, the advisory committees provide explanatory notes. *See* 28 U.S.C. § 2073(d). As the explanatory notes are contemporaneously drafted by the same entity charged with drafting the rules, they are a particularly reliable indicator of legislative intent. *See United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002) ("In the absence of clear legislative mandate, the Advisory Committee Notes provide a reliable source of insight into the meaning of a Rule, especially when, as here, the rule was enacted precisely as the Advisory Committee proposed."). We have accordingly observed that "[a]lthough Advisory Committee notes 'do not

foreclose judicial consideration' of a rule's validity and meaning, 'the construction given by the Committee is of weight.'"   *Petri*, 731 F.3d at 839 (quoting *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986)) (internal quotation marks omitted).   We have frequently relied on the advisory committees' notes for guidance.  *E.g.*, *id.* (clarifying any ambiguity in Federal Rule of Criminal Procedure 32 with reference to the notes); *Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 926 (9th Cir. 2007) (indicating that the Advisory Committee's note "guides our interpretation of [Federal Rule of Civil Procedure] 50"); *United States v. Saeteurn*, 504 F.3d 1175, 1180 (9th Cir. 2007) ("We look to Advisory Committee Notes when interpreting a federal rule for 'guidance and insight.'").

## A

### 1

We thus begin our analysis with the text of the rule.  Rule 26 is titled, "Duty to Disclose; General Provisions Governing Discovery."  Fed. R. Civ. P. 26.  It sets forth, at some length, the framework for civil disclosure and discovery.  Rule 26(a) sets out the requirements for parties' mandatory disclosures, including initial disclosures, expert disclosures, and other pretrial disclosures.  Among other things, parties must reveal the identity of expert witnesses as part of their mandatory disclosures, and most experts are required to submit reports which must include "the facts or data considered by" the expert in forming his or her opinions.[1]   Fed. R. Civ. P.

---

[1] This requirement applies to testifying experts retained or specially employed to provide expert testimony in the case or an employee whose duties regularly involve providing expert testimony.  Fed. R. Civ. P.

26(a)(2)(A)–(B). Rule 26(b) then sets out the scope of discovery. We have previously recognized that the scope of permissible discovery under Rule 26 is "broad." *See Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). The rule, however, does provide some limitations on discovery, such as protection for "trial preparation" materials as well as certain expert materials.

Rule 26(b)(3) is titled "Trial Preparation: Materials" and extends protection to "documents and tangible things" prepared "by or for" a party or its representative ("including the . . . party's attorney, consultant, surety, indemnitor, insurer, or agent") "in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A). A party may still obtain discovery of trial preparation materials under Rule 26(b)(3) if they are otherwise discoverable and the party shows that it has a "substantial need" for the materials and "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). To the extent that a court orders discovery of trial preparation materials under the rule, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

---

26(a)(2)(B). Parties must also disclose the subject matter and a summary of facts and opinions for testifying experts who fall outside the report requirement. Fed. R. Civ. P. 26(a)(2)(C). These experts typically include treating physicians or a party's employees who do not regularly provide expert testimony. *See* N. Lee Cooper & Scott S. Brown, *Selection of Experts, Expert Disclosure and the Pretrial Exclusion of Expert Testimony*, in 3 Robert L. Haig, *Business and Commercial Litigation in Federal Courts* § 28:10 (3d ed. 2012).

Rule 26(b)(4) is titled "Trial Preparation: Experts" and provides that parties may depose testifying experts. Fed. R. Civ. P. 26(b)(4)(A). It further provides that Rule 26(b)(3) "protect[s] drafts of any report or disclosure required under [the rule], regardless of the form in which the draft is recorded." Fed. R. Civ. P. 26(b)(4)(B). Trial preparation protection also extends to "communications between the party's attorney and any [expert who must provide a report] regardless of the form of the communications except to the extent that the communications": (i) relate to the expert's compensation; (ii) identify "facts or data" provided by the attorney that the expert considered; or (iii) "identify assumptions that the party's attorney provided and that the expert relied on in forming" his or her opinions. Fed. R. Civ. P. 26(b)(4)(C). Facts known to, or opinions held by, an expert retained "in anticipation of litigation or to prepare for trial and who is not expected" to testify at trial (sometimes known as a "consulting" expert) are ordinarily exempt from discovery absent a showing of "exceptional circumstances." Fed. R. Civ. P. 26(b)(4)(D).

2

Chevron argues that the text of Rule 26(b)(3), which protects materials prepared "by or for" a party or its "representative," applies to expert materials that do not fall within the attorney-expert communication or draft report protections under Rule 26(b)(4). It contends that there are no applicable exceptions beyond the limited requirements for disclosure (e.g., "facts or data") and specific exempted categories of attorney-expert communications. Chevron further argues that the disputed documents do not fall within those exceptions and thus, the general provisions of Rule 26(b)(3) protects them from discovery.

The basic structure of the rule contradicts Chevron's argument. Rule 26(b)(3) extends protection to "Materials." Rule 26(b)(4) then separately provides some protection for "Experts." This strongly suggests that experts were intended to be treated separately from the "materials" protected under Rule 26(b)(3). Indeed, the fact that the Committee used the term "expert" in Rule 26(b)(4) but not in the list of representatives in Rule 26(b)(3) suggests that the omission of "experts" in the text of Rule 26(b)(3) was intentional. *Hinchee*, 2013 WL 6655490, at *6.

However, there is also some textual support for the argument that Rule 26(b)(3) can apply to testifying experts. The phrase "by or for" and the term "representative" are somewhat broad on their face. Arguably, testifying experts prepare their analyses and supporting materials "for" the parties that retain them. Indeed, this expansive language led the First Circuit to conclude that a document prepared by a testifying expert was covered by the rule. *Sprague v. Director*, 688 F.2d 862, 868–70 (1st Cir. 1982) (concluding that a letter prepared by medical expert "for" counsel was protected by the work product doctrine). There are also cross-references within Rule 26(b)(3) and Rule 26(b)(4) which reflect a degree of interrelationship. *See* Fed. R. Civ. P. 26(b)(3)(A) (indicating that, "subject to Rule 26(b)(4)," materials otherwise protected under Rule 26(b)(3)(A) may be discovered in certain circumstances); Fed. R. Civ. P. 26(b)(4)(B)–(C) (indicating that draft reports and attorney-expert communications are generally protected by "Rules 26(b)(3)(A) and (B)"). The cross-references could be read to suggest that Rule 26(b)(3) protection would otherwise apply to experts if not for Rule 26(b)(4). *See In re Cendent Corp. Sec. Litig.*, 343 F.3d 658, 665 (3d Cir. 2003) (quoting *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 594 (3d Cir.

1984)).  Nonetheless, although the language of Rule 26(b)(3) and the cross-references do imply that there can be some overlap between the protections for "Materials" and "Experts," they do not necessarily indicate that *all* expert materials are *always* protected by Rule 26(b)(3).

Indeed, the explicit protections for draft reports and attorney-expert communications under Rule 26(b)(4) would be redundant under Chevron's interpretation of the rule. Chevron suggests that these provisions are not redundant because they: (a) extend protection to "facts or data" that would otherwise have to be disclosed within draft reports; and (b) set forth the exceptions to the explicit protection for attorney-expert communications.  This is implausible.  If that had been the Committee's intent, it would have been much simpler and clearer for it to declare that all expert materials are protected as trial preparation materials and then set forth exceptions to that general rule.

Thus, if we were to make our decision based on the text alone, we would conclude that Rule 26(b)(3)'s protection does not extend to *all* testifying experts.  Nonetheless, giving Chevron the benefit of the doubt, we will assume for the purposes of argument that the text's meaning is ambiguous, and accordingly, we look beyond the text itself.

B

We proceed to review the historical context of the rule, substantially aided by the Advisory Committee's notes.  The work product doctrine is a "qualified immunity from discovery" that attempts to balance "the necessity of protecting an attorney's preparation under the adversary system, and the policy of full and open discovery underlying

the" rules.   Patrick E. Higginbotham, *Duty to Disclose; General Provisions Governing Discovery* in 6 James Wm. Moore, *Moore's Federal Practice* § 26.70[1] at 26-434 to 26-435 (3d ed. 2013) [hereinafter "*Moore's*"].   The doctrine evolved out of the Supreme Court's seminal decision in *Hickman v. Taylor*, 329 U.S. 495 (1947).

In *Hickman*, the petitioner made discovery requests seeking memoranda prepared by the defendants' attorney memorializing witness interviews prepared after the underlying accident but before the litigation commenced.  *Id.* at 498–99.   The Supreme Court ruled that the information was not discoverable because it fell "outside the arena of discovery and [discovery would] contravene[] the public policy underlying the orderly prosecution and defense of legal claims."  *Id.* at 509–10.   That policy reflected the necessity "that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."  *Id.* at 510–11.   Thus, "the [w]ork product of the lawyer" is shown "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways."  *Id.* at 511 (internal quotation marks omitted).   The Court indicated that if this material was not protected from discovery, "much of what is now put down in writing would remain unwritten" and that "[a]n attorney's thoughts . . . would not be his own." *Id.*   The result of a contrary rule would be "[i]nefficiency, unfairness[,] . . . sharp practices," and a "demoralizing" effect on the profession.  *Id.*

In *Hickman*'s wake, the 1970 and 1993 amendments to Rule 26 addressed the work product doctrine and the scope of expert discovery.  Prior to the 1970 amendment, courts were divided on whether expert materials were protected by the

work product doctrine.  Richard L. Marcus, *Depositions and Discovery* in 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2029 (3d ed. 2013).  The 1970 amendment added provisions allowing for discovery of information held by testifying experts and partially codifying the work product doctrine.  Fed. R. Civ. P. 26(b) advisory committee's notes (1970 amendment); *United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010).[2]   The primary reason for permitting discovery of testifying experts (as opposed to consulting experts) was to allow "the adverse party to prepare for effective cross-examination and rebuttal."  Wright et al., *supra*, § 2032 (citing Fed. R. Civ. P. 26 advisory committee's notes (1970 amendment)).  The Committee explained that if this discovery were foreclosed, "then the narrowing of issues and elimination of surprise which discovery normally produces are frustrated."  Fed. R. Civ. P. 26(b)(4) advisory committee's notes (1970 amendment).  The Committee also indicated that the creation of the rule was intended to "reject as ill-considered the decisions which have sought to bring expert information within the work-product doctrine."  *Id.*; *accord United States v. Meyer*, 398 F.2d 66, 73–74 (9th Cir. 1968).

In 1993, the Committee added the provisions requiring most testifying experts to prepare reports including various disclosures.  Fed. R. Civ. P. 26(a)(2) advisory committee's notes (1993 amendments).  The Committee explained:

> The report is to disclose the data and other information considered by the expert and any

---

[2] Although Rule 26(b)(3) is focused on documents and tangible things, *Hickman* protects intangible things independent of the rule.  *Deloitte*, 610 F.3d at 136 (citing 329 U.S. at 512–13).

exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions – whether or not ultimately relied upon by the expert – are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

*Id.*

The requirement to disclose "data or other information" considered by the expert in forming the opinions coupled with the implication in Rule 26(b)(3) that the work product protection was "[s]ubject to" provisions requiring expert depositions led many courts to conclude that "any material given by an attorney to an expert [wa]s discoverable," including opinion work product.[3]  *See Moore's*, *supra*, § 26.80[1][a] at 26-477 to 26-478.  The Sixth Circuit's decision in *Regional Airport Authority of Louisville v. LFG, LLC*, 460 F.3d 697 (6th Cir. 2006), is illustrative.  There, the Sixth Circuit adopted the then-majority view "in holding that Rule 26 creates a bright-line rule mandating disclosure of all documents, including attorney opinion work product, given to testifying experts."  *Id.* at 717.  The court read the disclosure obligation as "requir[ing] disclosure of more than

---

[3] "Opinion work product" represents the core types of work product protected under *Hickman*, namely an attorney's mental impressions, conclusions, opinions, or legal theories developed in anticipation of litigation. *See Deloitte*, 610 F.3d at 136.  It "is virtually undiscoverable." *Id.* at 135 (quoting *Director v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997)).

facts" because the drafters had included the phrase "or other information." *Id.* at 716. Since there was no "qualifier as to the extent of the information," the court concluded that "none was intended" and the rule "requir[ed] disclosure of *all* information provided to testifying experts." *Id.* (internal quotation marks omitted); *accord Elm Grove Coal Co. v. Director*, 480 F.3d 278, 301 (4th Cir. 2007); *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001).

Against that backdrop, the Advisory Committee explained the impetus of the 2010 amendments as follows:

> Many courts read [the 1993 version of] the disclosure provision to authorize discovery of all communications between counsel and expert witnesses and all draft reports. The Committee has been told repeatedly that routine discovery into attorney-expert communications and draft reports has had undesirable effects. Costs have risen. Attorneys may employ two sets of experts – one for purposes of consultation and another to testify at trial – because disclosure of their collaborative interactions with expert consultants would reveal their most sensitive and confidential case analyses. At the same time, attorneys often feel compelled to adopt a guarded attitude toward their interaction with testifying experts that impedes effective communication, and experts adopt strategies that protect against discovery but also interfere with their work.

Fed. R. Civ. P. 26 advisory committee's notes (2010 amendments).

Accordingly, the amended rule "provide[s] work-product protection against discovery regarding draft expert disclosures or reports and – with three specific exceptions – communications between expert witnesses and counsel." Fed. R. Civ. P. 26 advisory committee's notes (2010 amendments). With respect to the disclosure obligations, the notes indicate that the requirements should "be interpreted broadly" to encompass "any material considered by the expert, from whatever source, that contains factual ingredients" but to exclude the "theories or mental impressions of counsel." Fed. R. Civ. P. 26(a)(2)(B) advisory committee's notes (2010 amendments). Notably, "[t]he disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." *Id.*; *see also Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, 840 F. Supp. 2d 1072, 1080 (N.D. Ill. 2012) (indicating that discoverable "factual" information includes material that the expert "considered" – i.e., was provided or otherwise exposed to in the course of developing his or her opinions – rather than just the narrower spectrum of material that the expert "relied upon"). The prior version of the rule had required the disclosure of "data or other information," but the Committee revised this to "facts or data" to "alter the outcome in cases that have relied on the 1993 formulation in requiring disclosure of all attorney-expert communications and draft reports." Fed. R. Civ. P. 26(a)(2)(B) advisory committee's notes (2010 amendments).

Rule 26(b)(4)'s protections for draft reports and attorney-expert communications "do not impede discovery about the

opinions to be offered by the expert or the development, foundation, or basis of those opinions." Fed. R. Civ. P. 26(b)(4) advisory committee's notes (2010 amendments). Indeed, the scope of permissible "disclosure and discovery otherwise allowed" remains "broad." Fed. R. Civ. P. 26(b)(4) advisory committee's notes (2010 amendments). For example, the rule allows for discovery of: (a) the testing of material involved in litigation and notes concerning any such testing; (b) alternative analyses, testing methods, or approaches; and (c) "communications the expert had with anyone other than the party's counsel about the opinions expressed." Fed. R. Civ. P. 26(b)(4) advisory committee's notes (2010 amendments). However, discussions with counsel about the "potential relevance of facts or data" and more general discussions "about hypotheticals, or exploring possibilities based on hypothetical facts" are protected. *Id.* Thus, materials containing "factual ingredients" are discoverable, while opinion work product is not discoverable. *See* Fed. R. Civ. P. 26(a)(2)(B) advisory committee's notes (2010 Amendments).

C

The historical evolution of the rule, its current structure, and the Committee's explanatory notes make clear that the driving purpose of the 2010 amendments was to protect opinion work product – i.e., attorney mental impressions, conclusions, opinions, or legal theories – from discovery. *See* 1 Steven S. Gensler, *Federal Rules of Civil Procedure: Rules and Commentary* Rule 26 cmt. & n.82 (2013) (indicating that the Committee was attempting to "alter the outcome reached in" cases such as *Regional Airport Authority*, 460 F.3d at 714). The protections for draft reports and attorney-expert communications were targeted at the areas most vulnerable to

the disclosure of opinion work product. The Committee thus sought to acknowledge the reality that attorneys often feel that it is extremely useful – if not necessary – to confer and strategize with their experts. But there is no indication that the Committee was attempting to do so at the expense of an adversary's ability to understand and respond to a testifying expert's analysis.[4]

To the contrary, the Committee sought to balance the competing policy considerations, including the need to provide an adversary with sufficient information to engage in meaningful cross-examination and prepare a rebuttal, on the one hand, and the need to protect the attorney's zone of privacy to efficiently prepare a case for trial without incurring the undue expense of engaging multiple experts, on the other. There is no indication that the Committee intended to expand Rule 26(b)(3)'s protection for trial preparation materials to encompass all materials furnished to or provided by testifying experts, which would unfairly hamper an adverse party's ability to prepare for cross-examination and rebuttal. We accordingly reject Chevron's argument.

---

[4] Indeed, we note that any ordinary work product protection (i.e., for trial preparation materials prepared by non-attorneys that do not reflect an attorney's mental impressions, conclusions, opinions, or legal theories) would typically be waived where the materials are disclosed to a testifying expert. *See United States v. Nobles*, 422 U.S. 225, 239 (1975) (concluding that although the work product protection would otherwise apply to an investigator's report, the defendant "by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony"); *Meyer*, 398 F.2d at 74 (emphasizing that the discovery of appraisers' work in a condemnation action was permissible because the appraisers were expert witnesses who were expected to testify at trial).

## IV

We conclude that Rule 26(b)(3) does not provide presumptive protection for all testifying expert materials as trial preparation materials.  The 2010 amendments did not fundamentally restructure Rule 26 to do so.  Our conclusion is fatal to Chevron's argument.  Accordingly, we independently arrive at the same result reached by our sister circuits. *See Hinchee*, 2013 WL 6655490, at *1; *Bjorkman*, 735 F.3d at 1180.  As Chevron has forsworn any challenge to the district courts' specific assessments of the various categories of documents in dispute, we also do not reach those aspects of the district courts' decisions.

**AFFIRMED.**