**GREATER BIRMINGHAM MINISTRIES, et al.,
Plaintiffs,**

v.

**John MERRILL, in his official capacity as the Alabama Secretary of State, Defendant.**

2:15–cv–02193–LSC

United States District Court,
N.D. Alabama,
Southern Division.

Signed 04/19/2017

---

Christina Swarns, Coty Montag, Deuel Ross, Leah C. Aden, Liliana Zaragoza, Natasha Merle, Victorien Wu, NAACP Legal Defense and Educational Fund Inc., Swati R. Prakash, Covington & Burling LLP, New York, NY, Elizabeth Reese, NAACP Legal Defense and Educational Fund Inc., James McCall Smith, Joanne B. Grossman, Covington & Burling LLP, Washington, DC, Joshua A. Gonzalez, Michael S. Greenberg, Nathan E. Shafroth, Richard B. Oatis, Robert D. Fram, Ryan M. Buschell, Sylvia Huang, Covington & Burling LLP, San Francisco, CA, Wallace J. Lee, Covington & Burling LLP, Redwood Shores, CA, Xiyun Yangy, Covington & Burling LLP, Los Angeles, CA, Herman N. Johnson, Jr., Cumberland Law School, Birmingham, AL, Joseph Mitchell McGuire, McGuire & Associates LLC, Montgomery, AL, for Plaintiffs.

Corey L. Maze, James W. Davis, Misty Shawn Fairbanks Messick, William G. Parker, Jr., Winfield J. Sinclair, Office of the Attorney General, Laura E. Howell, Alabama Attorney General's Office, Carrie E. McCollum, David B. Byrne, Jr., State of Alabama Office of the Governor, Montgomery, AL, John C. Neiman, Jr., Prim Formby Escalona, Maynard Cooper & Gale PC, Starr Turner Drum, Maynard Cooper & Gale, Birmingham, AL, for Defendant.

## MEMORANDUM OF OPINION AND ORDER

L. Scott Coogler, United States District Judge

### I. Introduction

In this action to enjoin enforcement of Alabama's Photo ID Law, Ala. Code § 17–9–30, the only remaining defendant, Alabama's Secretary of State John Merrill ("Secretary Merrill" or "the Secretary"), has moved this Court for a protective order preventing him from having to sit for a deposition, or in the alternative, for a protective order limiting his

deposition to no more than one hour and limiting it to only those topics where Plaintiffs have demonstrated that he possesses unique personal knowledge related to the subject matter of this litigation. (Doc. 153.) Secretary Merrill's justification for this request is that he is protected by a type of limited immunity that shields high government officials from depositions unless the party seeking the deposition proves first that the evidence is not available from some other deponent. Having reviewed the submissions by Secretary Merrill and Plaintiffs, and for the reasons discussed herein, the Court finds that the motion for a protective order is due to be granted in part and denied in part.

## II. Legal Standard

■ Parties are permitted to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Though the scope of discovery is broad, Rule 26(c) authorizes a court, for "good cause," to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Dunford v. Rolly Marine Serv. Co.*, 233 F.R.D. 635, 636 (S.D. Fla. 2005) (citing *Gulf Oil v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). "A court must balance the competing factors involved in determining whether good cause has been shown." *Id.* (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)). Because the burden of showing good cause to preclude a deposition altogether is a heavy one, protective orders prohibiting depositions are rarely granted. *See, e.g., Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error.").

■ However, an exception has been recognized when the witness is a high government official. A party must demonstrate "exigent circumstances" or "special need" to justify deposing a high government official concerning his or her reasons for taking official actions. *In re United States*, 985 F.2d 510, 512–13 (11th Cir. 1993) (per curiam); *see also In re United States*, 624 F.3d 1368, 1374 (11th Cir. 2010) ("[T]here must be a showing of special need before a high-ranking executive official can be compelled by the judiciary to appear."). Exigency is required before allowing their testimony because "[h]igh ranking government officials have greater duties and time constraints than other witnesses," and they should be "protect[ed] . . . from the constant distraction of testifying in lawsuits." *In re United States*, 985 F.2d at 512.

The foregoing principles led the Eleventh Circuit in *In re United States* to grant a mandamus order compelling the district court to quash a subpoena issued to the then-Food and Drug Administration ("FDA") Commissioner, Dr. David Kessler. *Id.* Defendants in that case had sought to dismiss an indictment for unlawful introduction of unapproved drugs and misbranded pharmaceuticals into interstate commerce by claiming that the FDA had selectively prosecuted them. *Id.* at 510–11. To that end, they subpoenaed Dr. Kessler for deposition. *Id.* The Eleventh Circuit directed the district court to quash the subpoena, however, because testimony was available from other witnesses, and because Dr. Kessler did not become the Commissioner until four years after the time the defendants' case was investigated by the FDA and two years after it was referred to the Justice Department for prosecution. *Id.* at 513.

Similarly in *In re United States*, the Eleventh Circuit allowed the Assistant Administrator for Water to appear in lieu of the Administrator of the U.S. Environmental Protection Agency at a hearing related to implementation of the Clean Water Act because the Assistant Administrator for Water is "the primary official responsible for fulfilling the national responsibilities of the Agency under the Clean Water Act" and actually

prepared the determination at issue in the litigation. 624 F.3d at 1373.

Nonetheless, several opinions from district courts within the Eleventh Circuit make it clear that there is no *per se* rule forbidding deposing high government officials. For example, in *Gray v. Kohl*, the district court held that a sheriff could be deposed in a challenge to a statute prohibiting the distribution of Bibles on a public sidewalk within 500 feet of a school safety zone. No. 07-10024-CIV, 2008 WL 1803643, at *1–2 (S.D. Fla. April 21, 2008). Acknowledging that the sheriff is a high government official, the court noted that "[t]he question, then, is whether the likelihood that [the sheriff] has personal knowledge of pertinent facts is sufficiently remote to constitute good cause to proscribe his deposition with a protective order or by other means available." *Id.* at *1. The district court determined that the plaintiff could depose the sheriff as to the manner and methods by which the statute is enforced, reasoning:

> Enforcement of the statute depends on the policies in place within Monroe County and the meaning that the Monroe County Sheriff's Office assigns to the statute. Sheriff Roth disavows any knowledge concerning policy making within the Monroe County Sheriff's Office and its enforcement and interpretation of F.S.A. § 810.0975. However, given Sheriff Roth's executive oversight and high level leadership and command responsibility over the Monroe County Sheriff's Office, Sheriff Roth may not so casually disavow his knowledge over matters such as policy making that typically occur at an executive level within an organization.... The strong likelihood that an executive leader like Sheriff Roth would have personal knowledge concerning the matters into which Plaintiff is entitled to inquire prevents this Court from finding good cause to issue a protective order barring Sheriff Roth's deposition or limit such deposition by other means available.

*Id.* at *2.

Similarly in *Celentano v. Nocco*, the plaintiff was terminated from the Pasco County Sheriff's Department and sued the county sheriff under state and federal law for retaliation and discrimination. No. 8:15-cv-1461-T-30AAS, 2016 WL 4943939 at *1 (M.D. Fla. Sept. 16, 2016). Based on deposition testimony that employment decisions rest with the sheriff, the district court concluded that the sheriff was likely to have "unique personal knowledge concerning the matters into which [p]laintiff is entitled to inquire" regarding his termination. *Id.* at *3.

Additionally, in *Atlanta Journal & Constitution v. City of Atlanta Dept. of Aviation*, a paper sued the Atlanta mayor and others on constitutional grounds regarding the placement of newsracks and newspapers sales at Hartsfield International Airport. 175 F.R.D. 347, 347–48 (N.D. Ga. 1997). Relying on *In re United States*, the city argued that the mayor's responsibilities placed significant constraints on his time, that he lacked personal knowledge relevant to the claims, and that the information sought could be obtained from others within the city's Department of Aviation. *Id.* at 348. Without deciding that the test articulated by the Eleventh Circuit in *In re United States* for a high government official applies to the Atlanta mayor, the court found that the circumstances justified his deposition because the mayor was named as a defendant in his official capacity, and because plaintiffs alleged that his aide had ushered the challenged ordinance through the city council. *Id.* On that basis, the court concluded that the mayor "is likely to possess pertinent, admissible, discoverable information which can be obtained only from him." *Id.*

## III. Application

Plaintiffs do not dispute that Secretary Merrill is a high government official for these purposes. Indeed, Secretary Merrill is one of Alabama's seven statewide elected constitutional officers. *See* Ala. Const. Art. V § 114 ("The governor, lieutenant governor, attorney general, state auditor, secretary of state, state treasurer, and commissioner of agriculture and industries shall be elected by the qualified electors of the state at the same time and places appointed for the election of members of the legislature in the year nineteen hundred and two, and in every fourth year thereafter."). He is "the chief elections

official in the state" and must "provide uniform guidance for election activities." Ala. Code § 17–1–3(a). Alabama's Photo ID Law invests him with "rule making authority for the implementation of [the Photo ID Law] under the Alabama Administrative Procedure Act," Ala. Code § 17–9–30(*o*), and makes him the officer who must "inform the public regarding the requirements of [the Photo ID Law] through whatever means deemed necessary." *Id.* § 17–9–30(n).

Secretary Merrill points out that Plaintiffs have already deposed his Rule 30(b)(6) designee, Ed Packard, Alabama's Administrator of Elections, for over thirteen hours by agreement of the parties, as well as the Assistant Director of Elections, Clay Helms; the Elections Attorney, Hon. Jean W. Brown; and the former Secretary's Chief of Staff and Deputy Secretary of State, Emily Marsal. He asserts that he is presently a defendant in a number of lawsuits brought against him in his official capacity, including at least five federal court lawsuits involving redistricting, felon voting disenfranchisement, judicial elections, ballot access in a special election, and ballot access in a general election as an independent candidate after previous participation in a presidential primary. He argues that his time would be monopolized if he were forced to testify in every case brought against him in his official capacity.

The Court recognizes the numerous demands on Secretary Merrill's time and the obstacles that no doubt must be overcome in scheduling his deposition. Nonetheless, this Court must decide whether Plaintiffs have established that he possesses unique personal knowledge of pertinent facts that cannot be obtained through less intrusive means. To that end, Plaintiffs have delineated six categories of "unique knowledge" that they say Secretary Merrill possesses, and they also argue that his personal intent in implementing the Photo ID Law is a vital component of their claims that the Photo ID Law violates the Voting Rights Act and the Fourteenth and Fifteenth Amendments. As these are the only topics Plaintiffs argue would justify a deposition, each will be addressed in turn.

## A. Knowledge of Alleged Voter Fraud

Plaintiffs' first category of "unique knowledge" possessed by the Secretary is "alleged voter fraud." More specifically, Plaintiffs first argue that Secretary Merrill has unique knowledge regarding his personal creation of the Elections Fairness Project shortly after he assumed office to monitor allegations of electoral fraud in Alabama and his personal restructuring of the responsibilities of his staff with respect to complaints of election fraud received by his office.

Secretary Merrill responds that his Rule 30(b)(6) designee has already explained the staff restructuring, stating that Secretary Merrill began utilizing election attorneys rather than office staff to follow up on voter complaints before the team would then meet with the Secretary personally to discuss whether to forward a complaint to the Alabama Law Enforcement Agency ("ALEA") or to the Attorney General's Office. Nonetheless, the Court finds that the policy rationale behind Secretary Merrill's creation of the Elections Fairness Project and the basis for restructuring of staff responsibilities relating to complaints of electoral fraud are known only to himself. Thus, Plaintiffs may depose Secretary Merrill on these topics. *See, e.g., Gray,* 2008 WL 1803643, at *2 (allowing sheriff's deposition on manner in which policy decisions were made within his office).

Plaintiffs also point to a statement Secretary Merrill made, recently written about in a February 2017 article about photo ID requirements, that "he has identified 304 potential cases of voter fraud in his state since he took office in 2015." Plaintiffs assert that the Secretary did not reveal this number in his responses to their interrogatory on voter fraud, instead only listing four instances or events, and that his Rule 30(b)(6) designee testified that he was aware of no more than one conviction for voter impersonation fraud since 2000 and one investigation of possible voter impersonation fraud during the 2016 general election.

In response, Secretary Merrill argues that Plaintiffs had opportunities to develop information about the over 300 alleged instances of voter fraud through less intrusive means. Specifically, he first points out that Plaintiffs'

interrogatory addressed only *"in-person* voter impersonation or other *in-person* voter fraud,"* which the Secretary openly interpreted "to mean when a person shows up in person at a polling place on election day and votes a ballot by representing that he or she is a person whom he or she is not." Second, Secretary Merrill emphasizes that while Plaintiffs did delineate a Rule 30(b)(6) deposition topic for *general* voter fraud, their failure to question his designee as to how "voter fraud" is defined for purposes of citizen complaints or the numbers of complaints can hardly be blamed upon him. Third, he points out that his Rule 30(b)(6) designee actually produced on the second day of his three-day deposition to Plaintiffs' counsel a 26–page spreadsheet titled "Voter Fraud Citizen Submissions to Office of Secretary of State April 1, 2016—January 26, 2017," said spreadsheet listing some 307 reported citizen complaints of election alleged irregularities. While the spreadsheet was redacted to protect the identities of the complainants, it contained the date of each complaint, the location, the name of the alleged violator, the alleged violation, the staff member assigned to the complaint, and the disposition (if made) for each alleged election violation.

It thus appears to the Court that Plaintiffs physically received during the Rule 30(b)(6) deposition a spreadsheet containing the substantive information that they now claim they can only get from the Secretary in his personal capacity. Indeed, on March 29, 2017, Plaintiffs requested Secretary Merrill produce an unredacted copy of the spreadsheet. Plaintiffs have not pointed to any unique knowledge Secretary Merrill may have about those complaints that his Rule 30(b)(6) designee would not have known, had they questioned him. It appearing to this Court that Plaintiffs could have obtained this information by other means, they will not be permitted to depose Secretary Merrill on the particular issue of his statement concerning 304 potential cases of voter fraud.

### B. Knowledge Regarding Proper Interpretation of the Photo ID Law

Plaintiffs' second category of "unique knowledge" possessed by Secretary Merrill

relates to the fact that his Rule 30(b)(6) designee testified that county registrars routinely direct questions about proper interpretation of the Photo ID Law and associated regulations to the Elections Division of the Secretary of State's office, and when answers to such questions are unclear, the Elections Division presents the question to Secretary Merrill himself for resolution, with input if necessary from legal counsel. Thus, Plaintiffs assert that the policy rationale behind the authoritative answers provided by Secretary Merrill, and in turn communicated by his staff to county registrars, is information possessed only by Secretary Merrill. The Court agrees. Plaintiffs may depose the Secretary on this issue.

### C. Knowledge of the Likely Effect of ALEA Closures on African–American Voters

Plaintiffs' third category of "unique knowledge" possessed by Secretary Merrill concerns an interview he gave on national television expressing his opinion that the September 30, 2015, decision to leave open only one day per month thirty-one ALEA offices issuing driver's licenses and non-driver ID cards, including offices in eight of eleven contiguous counties in Alabama's so called "black belt"—a string of counties where nearly half of the 130,000 eligible voters are African American and where the African American poverty rate is 41 percent, "would 'absolutely' not have a disparate racial impact with regard to photo IDs for voting." Plaintiffs point out that the Secretary's statement contradicts the testimony of former Secretary of ALEA Spencer Collier, who believed the closures would impact the right to vote of minority residents of Alabama's black belt areas, as well as the view of the U.S. Department of Transportation, which launched an investigation and later concluded that due to service reductions at ALEA offices, "African Americans residing in the Black Belt region of Alabama are disproportionately underserved by ALEA's driver licensing services, causing a disparate and adverse impact on the basis of race."

In response, Secretary Merrill argues that any knowledge he would have on the issue of

ALEA office closures would have no probative value on the issues remaining in this case considering that this Court previously ruled that Plaintiffs' request in their Second Amended Complaint that this Court order the reopening of the ALEA offices was not sufficient to confer Plaintiffs' standing over the ALEA Secretary, and thus dismissed the ALEA Secretary as a defendant. Secretary Merrill also states that Plaintiffs need no further discovery on the defense's position that the ALEA office hours do not impact a right to vote because of the many other ways a voter can obtain a photo ID in Alabama.

Contrary to Secretary Merrill's assertion that the ALEA office hours issue is no longer a part of this case, the Court will not say at this stage of the litigation that the ALEA office closures are wholly irrelevant to Plaintiffs' claims that Alabama's Photo ID Law violates the Fourteenth and Fifteenth Amendments and the Voting Rights Act. The Federal Rules of Civil Procedure strongly favor full discovery whenever possible, *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir.2013), and "[w]hen there is a doubt over relevancy, the court should still permit discovery," *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998). Secretary Merrill's personal opinion on the effect of the ALEA office closures is information known only to him, and Plaintiffs may depose him on that topic.

### D. Knowledge of Efforts to Contact Individual Voters Regarding the Photo ID Law

Plaintiffs' fourth category of "unique knowledge" possessed by Secretary Merrill concerns his efforts to contact voters about the Photo ID Law. In October 2015, he personally issued a press release stating that "twice per year" his office "will contact each eligible voter, of voting age, in the state to ensure that they are registered to vote, as well as see that they have obtained their government-issued voter photo ID." According to Plaintiffs, since the Secretary's Rule 30(b)(6) designee, the Administrator of Elections, testified that he had never seen that press release and was not aware of any such attempts to contact voters, only Secretary

Merrill can provide answers regarding the plan announced in his press release and the subsequent actions, or inactions, of his office.

Secretary Merrill's response is that since the Administrator of Elections did not know of any such "plan," the Court may infer that there was and is no such "plan," and that any such "plan" was merely theoretical. That response is not well-taken. It is not at all inappropriate for the Secretary to be examined on his personal statements about which his corporate designee is unaware, especially when they are closely related to one of the disputed issues in this litigation, i.e., whether the Photo ID Law has a discriminatory impact on voters of color in Alabama. Plaintiffs may depose Secretary Merrill on this topic.

### E. Knowledge of the Adequate Possession of Photo IDs by Registered Voters

Plaintiffs' fifth category of "unique knowledge" possessed by Secretary Merrill concerns an op-ed column that he personally authored that was published in October 2015, which has been disclosed in discovery. In it, the Secretary opined that Alabama does "not have a problem with making photo IDs available for voting" because, according to his own assessment of state data, "33 percent more Alabamians have some form of qualified government issued photo ID than are eligible to register to vote." Notwithstanding the fact that, as Secretary Merrill argues, Plaintiffs have already submitted expert reports concerning their position on ID possession rates in Alabama, Plaintiffs may still depose Secretary Merrill on the context and basis for this assertion because he personally authored the article.

### F. Knowledge of Efforts to Provide Photo IDs to Voters

In the same op-ed, Secretary Merrill also claimed that he personally reached out to all members of the Alabama Legislature and all State Probate Judges and asked them to provide three specific days when his office could schedule a drive for photo voter ID card issuance in their jurisdictions. Why Secretary Merrill decided to make and to publicize these personal invitations to state and

county officials is within his unique personal knowledge. Moreover, the full range of responses received by Secretary Merrill to the invitations he personally issued may be information known only to him.

While Secretary Merrill argues that Plaintiffs have already sought discovery on Mobile ID Unit requests, schedules, and visits, there may be additional information known only to the Secretary as noted above. Additionally, the Court agrees with Plaintiffs that the basis for the Secretary's office's responses to requests for the Mobile ID Unit to travel to a certain location may be known only by Secretary Merrill in some instances. For example, according to deposition testimony, Secretary Merrill personally approved a voter's request for an in-home visit—but he did so only after initially declining the visit and personally explaining to the voter that a photo ID would be unnecessary, given that that voter is qualified to vote absentee without a photo ID. The basis for Secretary Merrill's reversal of position on this requested home visit is unclear but is presumably within his unique personal knowledge.

Plaintiffs also point out that Secretary Merrill's Rule 30(b)(6) designee testified that Secretary Merrill was more hands-on than his predecessors in directing advertising about the Photo ID Law, in particular the public service videos in which Secretary Merrill himself and other public figures appeared. The Court also agrees with Plaintiffs that what Secretary Merrill aimed to achieve through those videos, and how, is within his unique personal knowledge, and he may be deposed on that topic.

### G. Secretary Merrill's Personal Intent in Implementing the Photo ID Law

Plaintiffs argue that the Secretary's intent in implementing the Photo ID Law is one aspect of their claims under the VRA and Constitution. For example, they argue that if Secretary Merrill made the statements regarding voter fraud in Alabama allegedly knowing that they were without factual basis, or if he implemented the law with knowledge that his efforts would not adequately address the alleged burdens imposed upon voters of color, that these instances would be relevant to whether the Photo ID Law was maintained on the basis of a pretextual purpose. Secretary Merrill disagrees, arguing that regardless of *his* intent in *implementing* the law, what matters is the intent of the Alabama Legislature in enacting the law, because even if he thought that voter fraud did not exist, he would still be required by law to implement the law.

The Court is of the opinion that the summary judgment stage of this litigation is a more appropriate time to address the question whether, aside from intent at the time of enactment, the intent of state officials in maintaining or operating a challenged measure can be an independent basis for a finding of intentional discrimination under the VRA and the Constitution. For present purposes, Plaintiffs may question Secretary Merrill on his intent as it relates to the various topics delineated above.

### IV. Conclusion

The foregoing demonstrates that unlike the FDA Commissioner in *In re United States*, who did not even take office until years after the investigation occurred about which defendants sought to depose him, Secretary Merrill's role with respect to implementation of the challenged Photo ID Law has been ongoing since he assumed office. Plaintiffs have sufficiently established that because he has been personally involved in implementing the law, such as by restructuring staff responsibilities for election fraud complaints, personally answering questions posed by county registrars with regard to interpretation of the law, deciding the content of advertising campaigns regarding the law, and making numerous public statements regarding its rationale and effects, sometimes asserting facts that no one else has asserted, Secretary Merrill "may not so casually disavow his knowledge" over the above-discussed topics. *Gray*, 2008 WL 1803643, at *2.

Moreover, with regard to the other cases the Secretary is involved in, he has not stated that he has received a deposition notice in any of those other cases, nor is there any indication that he possesses the same level of personal knowledge about those topics, such

as redistricting or felon disenfranchisement, that he does about implementation of Alabama's Photo ID Law.

The Secretary's motion for a protective order (doc. 153) is hereby **GRANTED IN PART** and **DENIED IN PART**. The motion is denied to the extent that Plaintiffs may depose Secretary Merrill. However, the motion is granted in that the deposition is limited in time to no more than four hours (objections not to be included in such time calculation) and in subject matter to only those topics where this Court has concluded in the foregoing discussion that Plaintiffs have shown that the Secretary has unique personal knowledge about which Plaintiffs have not already received substantial discovery.

**DONE** AND **ORDERED** ON APRIL 19, 2017.